UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:

| | |
|---|---|
| | CASE NO.: 21-10064 |
| BAYOU BYWATER LIVING, LLC | Jointly Administered with |
| WEBSTER STREET HOLDINGS, LLC | CASE NO.: 21-10065 |
| RELDS, LLC | CASE NO.: 21-10204 |
| SOUTH CLAIBORNE HOLDINGS, LLC | CASE NO.: 21-10205 |
| GERARD McGOVERN | CASE NO.: 21-11033 |
| | |
| DEBTORS | SECTION "A" |
| | |
| | CHAPTER 7 |

---

CARROLLTON & OAK, LLC

*Plaintiff*

VS                                             ADVERSARY NO:22-1004

GERARD MCGOVERN

*************************************************************

## L.R. 9013-1(E) *EX PARTE* MOTION FOR LEAVE TO FILE L.R. 9013-1(D) (13) *EX PARTE* MOTION TO FILE A LATE OBJECTION OR RESPONSE TO PREVENT MANIFEST INJUSTICE:

All counsel have been contacted and all expressed their objection hereto, with the exception of the trustee, Mr. Babin, who has not yet responded to email notification.

**MAY IT PLEASE THE COURT**:

**LANDLORD NGO'S OBJECTION TO NIDAL JABER/ CARROLLTON & OAK LLC'S PROOF OF CLAIM #13, AND RESPOINSE TO JOIN THE ADVERSARIAL PROCEEDING**

Your objector, Landlord Tommy Ngo, joins the Debtor McGovern's objection to Proof of Claim #13, original and as Amended. As a recent filer seeking Chapter 13 re-organization due to the Carrollton & Oak LLC (the "LLC") damage judgment in state court[1] and subsequent notice of seizure and sale of three immovable properties in Jefferson Parish, he is subject to the jurisdiction of this Court.[2]

As the non-prevailing state court party in the interlocutory judgment assessing liability for breach of Lease prior to trial on damages referenced above, he avers timely application for supervisory writ thereon to the Fourth Circuit Court of Appeals,[3] and further avers such proceeding is "related to" the instant

---

[1] *Carrollton & Oak LLC vs Nguyen, et. al,* CDC # 2017-0972 "F", on supervisory writs to the Fourth Circuit Court of Appeals, bearing Docket # 2022-CW-0522. *See Exhibit B, infra, Fn. 4*

[2] *In re*: Tommy Ngo, Ch. 13, 10/04/2022. Case No. 22-11179.

[3] **Exhibit A**: Supervisory writ application and appendix, Docket # 2022-CW-0522, Fourth Circuit Court of Appeals., filed August 10, 2022. *See Appendix*, Item #3: Liability judgment and Reasons for Judgment. (Please note this Court may "gain insight" into the interlocutory nature of this judgment, regardless of date of signing, in the timetable set forth on the first page, first full paragraph of the Reasons for Judgment, where it is made clear that liability for breach of lease was decided and rendered by the presiding judge days before the court there proceeded to consider damages.)

proceeding. Accordingly, Mr. Ngo seeks joinder, continuance at least until November 2, 2022 at 1pm, and ancillary relief as deemed appropriate by this Court.

## A. PROCEDURAL POSTURE

Trial of Carrollton & Oak LLC's (the "LLC")[4] Adversarial Proceeding against Debtor estate of Gerard McGovern, currently scheduled for October 13-14, 2022 by Joint Pre-Trial Order dated October 3, 2022.[5] Plaintiff LLC filed Proof of Claim #13 on December 6, 2021, Amended on February 3, 2022, to seek $4,118,652.02 from Debtor, to which Debtor Objected and filed a Motion for Sanctions and ancillary relief on August 29, 2022.[6] Hearing thereon was rescheduled by the Clerk of Court for November 2, 2022 at 1pm.[7]

However, as of entry of Joint Pre-Trial Order on Oct. 3, 2022, neither the LLC nor its counsel had been served with the Objection,[8] so it is hard to see how the laudably non-duplicative plan of hearing both the Adversarial Proceeding and

---

[4] Represented herein by Nidal Jabar, filed December 6, 2021, Amended February 3, 2022 (R.Doc 12 in # 22-01004, P. 2), whose purchase of 50% of the LLC's interest was approved by the Court in order of March 14, 2022 (R. Doc. 344) (R.Doc 13 in # 22-01004, P. 2.} See R.Doc. 345, case # 21-10064, transcript (9 pages *in globo*), March 9, 2022.

[5] R. Doc. 13 in Case # 22-01004, last page.

[6] R.Doc 167.

[7] Joint Pre-Trial Order, R.Doc 13 in case #22-01004, P. 2, filed 10/3/2022.

[8] R. Doc 13, in # 22-01004, p. 2.

the Objection to Proof of Claim #13 on October 13-14, 2022 could be achieved within the adequate notice prong of due process in a mere ten days at most.

Your belated additional objector/party, Landlord Tommy Ngo, has filed for Ch. 13 reorganization on 10/04/2022. Case No. is 22-11179. He seeks to join the adversarial proceeding as well as the Debtor's Objection to POC #13. Landlord is the holder in due course of a Promissory Note (the "Note") made by the LLC, and executed by the Debtor McGovern and Objector #13, Nidal Jaber, and intends to file Proof of Claim thereon.

However, your Mover goes further, to educate the Court as to the fundamentally erroneous premise of law and contract in the first paragraph of Section 4 in the Joint Pre-Trial Order.[9] Reconsideration of governing substantive Louisiana real estate law applicable in this matter, as is shown, will save the Court a great deal of time and effort.

### B. THE FUNDAMENTAL PREMISE UPON WHICH THE SCHEDULED TRIAL WOULD OPERATE MISSES THE MARK WIDELY, CAUSING MANIFEST INJUSTICE UNLESS PREVENTED, ON BREACH OF THE APRIL 24, 2014 LEASE WITH OPTION TO PURCHASE

---

[9] "At any time during the 15-year term of the Lease, C&) had the right to exercise the option [to purchase the subject property]. Under the terms of the agreement, after notification to Ngo that C&O wished to exercise the option, C&O then has five years to pay the option amount [the Promissory Note]. To date, the option has not been exercised." R. Doc. 13 in case # 22-1004, P. 3, Sec. 4, first paragraph

The fundamental error of substantive real estate law repeated here (See Fn. 10, *infra*) mis-apprehends a deceptively simple predicate as to "stripping naked" the instant Option to Purchase, embedded within a 15-year Lease with Option to Purchase ("LWOTP") breached prior to end of term, resulting in a slugfest of extraneous evidence, inapposite theories of law, frustration and waste of valuable judicial resources.[10]

The option to purchase has not been exercised "to date" by C&O LLC, simply because it is no longer available *to be* exercised. Nor had it been available to exercise after April 24, 2019. The LLC, having failed to pay the 5-year $700,000 Promissory Note ("Note") when due (on or about April 24, 2019), authored its own demise. The Note was paraphed *Ne Varietur* with the Lease with Option to Purchase ("LWOTP"), both having been executed on April 24, 2014.[11]

---

[10] See **Exhibit A,** *supra* (Esp. Law and Argument Pages 20-27): A basic error of law in the trial court, currently on supervisory review in the Fourth Circuit Court of Appeals, has resulted in wrongfully assigning liability for breach to Landlord Tommy Ngo, rather than to property manager Carrollton & Oak, LLC, on the triple net Lease

[11] Ngo reserves its right to file a Proof of Claim for the unpaid Note against Debtor and against Jaber, individually and as sole member of the LLC. Further, the prescriptive period is five years after due date for suit on an unpaid promissory Note. *See* **La. C.C. Art. 3498**, which period does not abate due to an impermissibly generous misreading of the contract and Note at issue here.

The Lease automatically cancelled under the LWOTP, Art. XVI(b)[12]. There is no curative provision other than payment in full. The LLC, having waived notice and legal proceedings under the LWOTP, Sec. XVII, concedes it has never paid the Note. Failure of the LLC to pay the Note in full when due, on its own terms, constituted a non-curable event of default, terminating the LWOTP under the LWOTP, Art. XVI (b).[13] Necessarily, the Option to Purchase expires therewith.

> "This Option is valid only so long as the Lease is valid. If the Lease is cancelled or terminated for any reason whatsoever, the Option automatically terminates." LWOTP, Art. XVIII, Sec. 25(f)

As more fully briefed in the writ application (**Exhibit A, *See esp*. Law and Argument, pages 9-19**), the baseline error of law in CDC was failure to recognize that non-payment of the five year Note automatically cancelled the term of the 15-year Lease, thereby "unclothing" the unexercised option to Purchase, which Option automatically terminates thereupon by operation of law and contract. Stripped naked, the Option ceases to exist.

---

[12] Due to this Event of Default[12] and mere arrival of stated term under La. C.C. Art. 1990.

[13] **MATH**: The original amount of the Note on April 24, 2014 was **$703,727.49** which at simple interest of 3% *per annum*, or $21,111.82 per year, is valued as of April 24, 2022 (8 years) at **$872,622.09** principal plus interest.

Thus, on or about[14] April 24, 2019, the Lease was cancelled, as was the Option to Purchase. Carrollton & Oak LLC, then owned 50/50 by Jaber and McGovern, acquired no more status thereafter than it would as a mere squatter or trespasser, but nonetheless kept the subject property out of the flow of commerce to this day. The LLC was a precarious possessor in bad-faith.

### C. THE MARCH 2022 APPROVAL OF SALE OF DEBTOR'S 50% INTEREST IN THE LLC, AND CONTINUING JURISDICTION THEREIN

As a result of the March 2022 Sale Approval, Jaber proceeded to trial in civil district court for the Parish of Orleans on March 31-April 12, 2022, as the sole owner of C &O LLC, reaping a judgment of $6m in favor of C &O LLC. The damages judgment issued in the CDC trial court reflected with astounding verisimilitude the Amended Proof of Claim Mr. Jaber filed in these proceedings as an adversarial complaint against Debtor.

Thus, as eloquently stated in Debtor's objection to POC #13, Jaber's offer to purchase McGovern's 50% interest in C&O LLC some few weeks before state

---

[14] The April 9, 2019 Receipt, at most, caused a one-week "Grace Period" of forbearance (**Exhibit A, *See esp*. Law and Argument, Pages 16-17**)

court trial[15] commenced March 31, 2022, could not have been in good faith, as was falsely attested to before this Court.[16]

> This Court "retains(s) sole and exclusive subject matter jurisdiction to implement, interpret and enforce the terms of this Motion and the sale order, and adjudicate all claims, controversies, and/or disputes arising from or related to the proposed sale."[17]

Whether or not Mr. Jabar acquired a retroactive litigious right of action on behalf of the Debtor's 50% interest in the LLC, as a result of the sale order confected and approved in March of 2022, eschewing the 50% "Agreed Reduction Obligation" in state court (but not federal court), and ostensibly providing Mr. Jabar with a right of action to prosecute there on behalf of the LLC, asserting 100% interest in the LLC, on transactions and occurrences pre-dating sale order approval here, , are both "claims, controversies and disputes arising from or related to the sale order."

## D. LANDLORD SEEKS JOINDER AS AN INDISPENSABLE PARTY TO THE ADVERSARIAL PROCEEDING

Lest the litigants here lose sight of the forest for the trees, it must be remembered that the damage claimed by Mr. Jabar against his partner in the LLC,

---

[15] Nowhere in the state court record would one find the Approval of Order of Sale. That is, if the entire record were not sealed by the judge in Civil District Court, in violation of La. Const. Art. 22. Its absence is clear indicia of Mr. Jabar's bad-faith.
[16] R. Doc. 324, #21-10064, Para. 9.
[17] R. Doc. 324 and 324-1, filed 2/15/22, Case # 21-10064, pages 3-4, Paragraph 10 (c ) and (d).

and *vice versa*, ultimately falls upon the landlord to remedy. The strong state policy of bringing the property back into the flow of commerce demands it.

Whether the Court agrees with the Debtor, the Claimant, or Landlord, pointing of fingers of blame against each partner in the LLC towards the other, does nothing to alleviate the financial pain and actual damage suffered by the owner of this historic district property at the corner of S. Carrollton and Oak St. The LLC itself, as a juridical entity comprised of these two members at all times relevant hereto, is contractually liable therefor under the triple-net lease.

Equitably, it is incredulous that a 100% property manager LLC, under a triple net Lease with Option to Purchase, somehow reaped a windfall award of over $6M in liability for property damages and lost rentals, against its own landlord, especially where its 50/50 LLC partner, Debtor herein, sold its 50% interest in the LLC for a mere $10,000 less than two months before the state court trial, without a whiff of disclosure. Mr. Ngo, it is imagined, would have been elated to bid $15,000, thereby reducing its exposure by some $3M. Doubly incredulous is that Claimant # 13 seeks essentially the same damage windfall here against his former partner. In Yiddish, this would be called *chutzpah*.

Debtor, albeit subpoenaed for trial in state court, failed to appear; adversarial complaint and POC #13 herein were inexplicably ruled inadmissible as evidence and as interrogation on cross at trial.

## E.  CONCLUSION

The Lease terminated in five years, upon failure of the LLC to exercise its option to purchase, for which it had paid $300,000 down payment as an "Option Fee" upon execution of the LWOTP, by NOT paying the $700,000 Promissory note[18] five years after Mr. Ngo's grant of the Option.

Having defaulted on their otherwise 15-year term of Lease, C&O LLC, thereafter held a worthless, expired Option as its sole "asset". The LLC status in the subject property was automatically demoted to squatters, no more and no less, whose precarious possession for over three years since April 30, 2019 caused in large part the deterioration and rental losses to an historic uptown property. Scofflaws must be cast in judgment; they don't merit windfalls.

---

[18] **Exhibit B**, March 9, 2010 Reconventional Demand by Ngo against LLC and McGovern, *See esp* P. 7, **The April 24, 2014 Promissory Note,** in the original amount of **$703,727.49 (@ 3% *per annum*)**, exclusion of which from evidence required extraordinary legal gymnastics by the state court trial judge. The Note is presented here as evidence in both plaintiff's and defendant's exhibit list. (Exhibit by Plaintiff in R. Doc. 12, Case # 22-1004, p. 13, Carrollton Exhibit 9, and by Defendant in R. Doc. 13, p. 17, McGovern Exhibit F.) **It is an element of damages in Landlord Ngo's proposed Proof of Claim.**

Objector and proposed complainant Landlord Ngo expresses his apologies to the Court for the lateness of the instant motion, his counsel's regret that the pre-trial conference fell on the holiest day of the Jewish Year, precluding his attendance, and implores the Court to grant the instant motion to prevent manifest injustice.

Respectfully submitted,

Justin Asher Zitler
La Bar No.: 18517
4819 Constance Street
New Orleans, Louisiana 70115
Telephone No.: 504-782-5206
Email: jazitler@bellsouth.net

St. Ct. Attorney for Mr. Tommy Ngo

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE:

**BAYOU BYWATER LIVING, LLC**
**WEBSTER STREET HOLDINGS, LLC**
**RELDS, LLC**
**SOUTH CLAIBORNE HOLDINGS, LLC**
**GERARD McGOVERN**

**CASE NO.: 21-10064**
**Jointly Administered with**
**CASE NO.: 21-10065**
**CASE NO.: 21-10204**
**CASE NO.: 21-10205**
**CASE NO.: 21-11033**

    **DEBTORS**

**SECTION "A"**

**CHAPTER 7**

---

**CARROLLTON & OAK, LLC**

*Plaintiff*

**VS**                                      **ADVERSARY NO:22-1004**

**GERARD MCGOVERN**

*Defendant*

---

## PROPOSED ORDER

**CONSIDERING THE FOREGOING MOTION AND EXHIBITS,**

    **IT IS ORDERED** that leave of court be and hereby is **GRANTED** to

Tommy Ngo to file the L.R. 9013-1(D) (13) *EX PARTE* MOTION TO FILE

A LATE OBJECTION OR RESPONSE to prevent manifest injustice:

    **SIGNED, NEW ORLEANS, LA., THIS \_\_\_\_DAY OF OCTOBER, 2022.**

                    _____

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

**IN RE:**

| | |
|---|---|
| **BAYOU BYWATER LIVING, LLC** | **CASE NO.: 21-10064** |
| **WEBSTER STREET HOLDINGS, LLC** | **Jointly Administered with** |
| **RELDS, LLC** | **CASE NO.: 21-10065** |
| **SOUTH CLAIBORNE HOLDINGS, LLC** | **CASE NO.: 21-10204** |
| **GERARD McGOVERN** | **CASE NO.: 21-10205** |
| | **CASE NO.: 21-11033** |

**DEBTORS**                                     **SECTION "A"**

**CHAPTER 7**

---

**CARROLLTON & OAK, LLC**

*Plaintiff*

**VS**                                          **ADVERSARY NO:22-1004**

**GERARD MCGOVERN**

*Defendant*

---

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served

upon all counsel, parties and non-parties, according to the matrix attached,

this 12th day of October 2022.

Justin Asher Zitler

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | |
| BAYOU BYWATER LIVING, LLC | * | CASE NO: 21-10064 |
| | * | Jointly Administered with |
| WEBSTER STREET HOLDING, LLC | * | CASE NO. 21-10065 |
| RELDS, LLC; AND | * | CASE NO.21-10204 |
| SOUTH CLAIBORNE HOLDINGS, LLC | * | CASE NO. 21-10205 |
| GERARD MCGOVERN | * | CASE NO. 21-11033 |
| | * | |
| | * | SECTION  A |
| | * | |
| *Debtor(s)* | * | CHAPTER 7 |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the Order on the  Motion for Authority to Sell Movable Property at Private Sale Free and

Clear of All Liens, Claims and Encumbrances [P-344] has been served on the following at the addresses given below and has been

served upon the mailing matrix, a copy of which is attached hereto, via United States Mail, First Class, Postage Prepaid, on the 15th

day of March, 2022.

Gerard McGovern
c/o Jonathan R. DeTrinis
DeT Law Firm, LLC
4000 Bienville Street, Suite C-1
New Orleans, LA 70119

Nidal Jaber
c/o William E. Steffes
13702 Coursey Blvd., Bldg. 3
Baton Rouge, LA 70817

Office of the U.S. Trustee
400 Poydras Street, Suite 2110
New Orleans, Louisiana 70130

Marilyn Alexander
2433 Pine Street
New Orleans, LA 70125

Darryl T. Landwehr
650 Poydras Street, Suite 2519
New Orleans, LA 70130

Laurie Martin
through her attorney of record
Ameila L. Hurt
Daniel Lichtl
Kelly Hart Pitre
400 Poydras Street, Suite 1812
New Orleans, LA 70130

Carrollton & Oak, LLC
through its attorney of record
Michael Bagneris
935 Gravier Street
New Orleans, LA 70112

Carrollton & Oak, LLC
through its attorney of record
William E. Steffes
13702 Coursey Blvd., Bldg. 3
Baton Rouge, LA 70817

Loan Partners, LLC
1510 Woodland Hwy., Suite A
Belle Chasse, LA 70037

*S/Wilbur J. "Bill" Babin, Jr.*
WILBUR J. "BILL" BABIN, JR.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>053L-2<br>Case 21-10064<br>Eastern District of Louisiana<br>New Orleans<br>Tue Jan  4 10:47:10 CST 2022 | Bayou Bywater Living, LLC<br>c/o Gerard McGovern, principal<br>832 Esplanade Ave.<br>New Orleans, LA 70116-1941 | Chaffe McCall, LLP<br>c/o J. Dwight LeBlanc, Jr.<br>1100 Poydras Street<br>Suite 2300<br>New Orleans, LA 70163-2301 |
| Gulf Coast Bank and Trust Company<br>Newman, Mathis Brady & Spedale<br>C/O Wayne A. Maiorana, Jr.<br>3501 N. Causeway Blvd, Suite 300<br>Metairie, LA 70002-3618 | Latter And Blum, Inc.<br>Lisa Whitfield/Latter and Blum<br>200 Broadway Street<br>#142<br>New Orleans, LA 70118-3573 | Loan Partners, L.L.C.<br>248 Belleville St.<br>New Orleans, LA 70114 |
| Prime Imports Company, Inc.<br>2325 Manhattan Blvd.<br>Harvey, LA 70058-3450 | Trustmark Bank<br>Richard A. Rozanski, APLC<br>P.O. Box 13199<br>Alexandria, LA 71315-3199 | United States Bankruptcy Court<br>Eastern District of Louisiana<br>Hale Boggs Federal Building<br>500 Poydras Street, Suite B-601<br>New Orleans, LA 70130-3319 |
| Christy R. Bergeron, Esq.<br>United States Trustee's Office<br>400 Poydras Street, Suite 2100<br>New Orleans, Louisiana 70130-3282 | City of New Orleans, Bureau of Treasury<br>1300 Perdido St<br>Rm. 1W40<br>New Orleans, LA 70112-2125 | Congeni Law Firm, LLC<br>c/o Leo D. Congeni<br>650 Poydras St., Suite 2750<br>New Orleans, LA 70130-6152 |
| DAVID W. ASBACH,<br>Christy R. Bergeron<br>400 Poydras Street, Suite 2110<br>New Orleans, LA 70130-3238 | Gerard McGovern<br>27 Audubon Blvd<br>New Orleans, LA 70118-5537 | Gerard McGovern<br>832 Esplanade Ave.<br>New Orleans, LA 70116-1941 |
| Greta M. Brouphy<br>Heller, Draper & Horn, L.L.C.<br>650 Poydras Street, Suite 2500<br>New Orleans, LA 70124<br>gbrouphy@hellerdraper.com 70130-6175 | Laurie Martin<br>(through counsel)<br>400 Poydras Street, Ste. 1812<br>New Orleans, LA 70130-3347 | Leo D. Congeni<br>Congeni Law Firm, LLC<br>650 Poydras Street, Suite 2750<br>New Orleans, LA 70130-6152 |
| Loan Partners<br>7835 Maple St<br>New Orleans, LA 70118-3960 | Loan Partners, L.L.C.,<br>Joshua P. Mathews<br>248 Belleville St.<br>New Orleans, LA 70114 | Marilyn Alexander C/o Amelia Hurt<br>400 Poydras Street, Suite 1812<br>New Orleans, LA 70130-3347 |
| Barbara Rivera-Fulton<br>P.O. Box 19980<br>New Orleans, LA 70179-0980 | Bonnie Alford<br>c/o Barry H. Grodsky<br>1100 Poydras St.<br>Ste. 2100<br>New Orleans, LA 70163-2100 | DaShawn P. Hayes<br>The Hayes Law Firm, PLC<br>1100 Poydras Street<br>Ste 1530<br>New Orleans, LA 70163-1502 |
| Dana DeGeorge<br>1509 Butternut Avenue<br>Metairie, LA 70001-3343 | Elvia Schreiber<br>PO Box 52017<br>New Orleans, LA 70152-2017 | Gerard McGovern<br>c/o DeT Law Firm, LLC<br>4000 BIENVILLE ST<br>Suite C-1<br>New Orleans, LA 70119<br>New Orleans, LA 70119-5163 |
| Greta M Brouphy<br>Heller, Draper & Horn, LLC<br>650 Poydras Street<br>Suite 2500<br>New Orleans, LA 70130-6175 | Jonathan R. DeTrinis<br>DeT Law Firm, LLC<br>4000 Bienville Street, Suite C-1<br>New Orleans, LA 70119-5163 | Laurie Martin<br>Kelly Hart Pitre<br>400 Poydras Street<br>Suite 1812<br>New Orleans, LA 70130-3347 |

Office of the U.S. Trustee
400 Poydras Street
Suite 2110
New Orleans, LA 70130-3238

Peter Schreiber
PO Box 52017
New Orleans, LA 70152-2017

Wilbur J. (Bill) Babin Jr.
3027 Ridgelake Drive
Metairie, LA 70002-4924

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Carrollton & Oak, LLC

(d)Loan Partners
7835 Maple St.
New Orleans, LA 70118-3960

(d)Loan Partners, LLC
7835 Maple Street
New Orleans, LA 70118-3960

(d)Trustmark Bank
Richard A. Rozanski, APLC
P.O. Box 13199
Alexandria, LA 71315-3199

(u)Jennifer Neil

(d)Leo D. Congeni
Congeni Law Firm, LLC
650 Poydras St., Suite 2750
New Orleans, LA 70130-6152

(u)Trustee Unassigned

End of Label Matrix
Mailable recipients    32
Bypassed recipients     7
Total                  39

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0531-2<br>Case 21-11033<br>Eastern District of Louisiana<br>New Orleans<br>Tue Jan  4 10:46:18 CST 2022 | AmeriCredit Financial Services, Inc. dba GM<br>1027 Ninth Street<br>New Orleans, LA 70115-2357 | Bank of Louisiana<br>Newman Mathis Brady & Spedale<br>3501 N Causeway Blvd, Ste 300<br>Metairie, LA 70002-3618 |
| Gulf Coast Bank and Trust Company<br>Newman, Mathis Brady & Spedale<br>C/O Wayne A. Maiorana, Jr.<br>3501 N.\. Causeway Blvd., Suite 300<br>Metairie, LA 70002-3618 | (p)HOME POINT FINANCIAL CORPORATION<br>11511 LIMA ROAD<br>2ND AND 3RD FLOOR<br>FARMERS BRANCH TX 75234-6451 | Loan Partners, LLC<br>1510 Woodland Hwy., Ste. A<br>Belle Chasse, LA 70037-1639 |
| Prime Imports Company, Inc.<br>2325 Manhattan Blvd.<br>Harvey, LA 70058-3450 | United States Bankruptcy Court<br>Eastern District of Louisiana<br>Hale Boggs Federal Building<br>500 Poydras Street, Suite B-601<br>New Orleans, LA 70130-3319 | 27 Audubon, LLC<br>c/o Barry Grodsky<br>1100 Poydras Street, Suite 2100<br>New Orleans, LA 70163-2100 |
| Acima Credit<br>9815 South Monroe Street<br>4th Floor<br>Sandy, UT 84070-4384 | (p)AMERICREDIT FINANCIAL SERVICES DBA GM FINAN<br>PO BOX 183853<br>ARLINGTON TX 76096-3853 | AmeriCredit/GM Financial<br>Attn: Bankruptcy<br>Po Box 183853<br>Arlington, TX 76096-3853 |
| American InfoSource as agent for<br>T-Mobile<br>PO Box 248848<br>Oklahoma City, OK 73124-8848 | Amex<br>Correspondence/Bankruptcy<br>Po Box 981540<br>El Paso, TX 79998-1540 | Arthur Wittenberg<br>201 International Circle, Suite 230<br>Cockeysville, MD 21030-1344 |
| BANK OF LOUISIANA<br>c/o JEFFREY M. TOEPFER<br>NEWMAN, MATHIS, BRADY & SPEDALE<br>3501 N. Causeway Blvd., Suite 300<br>Metairie, Louisiana 70002-3618 | Bank Of Louisiana<br>P.O. Box 6972<br>Metairie, LA 70009-6972 | Barbara Rivara-Fulton<br>c/o Fernand L. Laudumiey, IV<br>1100 Poydras St., Suite 2300<br>New Orleans, LA 70163-2301 |
| Benedict R. McGovern Revocable Trust<br>Attn: Christian Weiler<br>909 Poydras Street, Suite 1250<br>New Orleans, LA 70112-4018 | Brkab/cbna<br>Po Box 6497<br>Sioux Falls, SD 57117-6497 | Capital One<br>Attn: Bankruptcy<br>Po Box 30285<br>Salt Lake City, UT 84130-0285 |
| Carrolton & Oak, LLC<br>c/o Michael Bagneris<br>935 Gravier Street<br>New Orleans, LA 70112-1608 | Canlar<br>Attn: Centralized Bankruptcy<br>425 Phillips Blvd.<br>Ewing, NH 08618-1430 | Chase Auto Finance<br>Attn: Bankruptcy<br>Po Box 901076<br>Fort Worth, TX 76101-2076 |
| (p)JPMORGAN CHASE BANK  N A<br>BANKRUPTCY MAIL INTAKE TEAM<br>700 KANSAS LANE FLOOR 01<br>MONROE LA 71203-4774 | Christy R. Bergeron<br>400 Poydras Street, Suite 2110<br>New Orleans, LA 70130-3238 | Citi/Sears<br>Citibank/Centralized Bankruptcy<br>Po Box 790034<br>St Louis, MO 63179-0034 |
| Citibank/Best Buy<br>Citicorp Credit Srvs/Centralized Bk dept<br>Po Box 790034<br>St Louis, MO 63179-0034 | Citibank/The Home Depot<br>Citicorp Credit Srvs/Centralized Bk dept<br>Po Box 790034<br>St Louis, MO 63179-0034 | (p)CITY OF NEW ORLEANS<br>ATTN MICHELLE SHIELDS<br>1300 PERDIDO ST<br>NEW ORLEANS LA 70112-2128 |

City of New Orleans / Bureau of Treasury
1300 Perdido Street, Room 1W40
New Orleans, LA 70112-2125

Costco Anywhere Visa Card
Attn: Bankruptcy
Po Box 6500
Sioux Falls, SD 57117-6500

Dana DeGeorge/Southern Loan
2325 Manhattan Blvd
Harvey, LA 70058-3450

Dillards Card Services/Wells Fargo Bank
Attn: Bankruptcy
Po Box 10347
Des Moines, IA 50306-0347

Ditech
Attn: Bankruptcy
Po Box 6172
Rapid City, SD 57709-6172

EOS USA
Attn: Bankruptcy
700 Longwater Dr.
Norwell, MA 02061-1624

Entergy
P.O. Box 8108
Baton Rouge, LA 70826-8108

Entergy Gulf State
Attn: Bankruptcy
Po Box 8105
Baton Rouge, LA 70891-8105

Entergy Louisiana LLC
L-JEF-359
4809 Jefferson Hwy Ste A
New Orleans, LA  70121-3138

Entergy new Orleans LLC
L-JEF-359
4809 Jefferson Hwy Ste A
New Orleans, LA  70121-3138

Equifax
P.O. Box 740256
Atlanta, GA 30374-0256

Eric Person
1539 Jackson Ave, Suite 100
New Orleans, LA 70130-5861

Experian
P.O. Box 8701
Allen, TX 75013-3742

First Bank & Trust
P.O. Box 1830
Covington, LA 70434-1830

GULF COAST BANK AND TRUST COMPANY
c/o WAYNE A. MAIORANA, JR.
KENNAN, MATHIS, BRADY & SPEDALE
3501 North Causeway, Suite 300
Metairie, LA 70002-3618

Greta M. Brouphy, Subchapter V Trustee
650 Poydras Street, Suite 2500
New Orleans, LA 70130-6175

(p)AMERIFACTORS FINANCIAL GROUP LLC
ATTN PEYTON WELSH
215 CELEBRATION PL
SUITE 340
CELEBRATION FL 34747-5410

Hancock Whitney Bank
701 Poydras St.-30th Floor
New Orleans, LA 70139-7753

(p)HANCOCK WHITNEY BANK
ATTN ANNE JAMES
2510 14TH STREET 2ND FLOOR
GULFPORT MS 39501-1948

Home Point Financial Corporation
c/o Ms. Alicia B. Cook
LAW OFFICES OF HERSCHEL C. ADCOCK, JR.
P.O. Box 87379
Baton Rouge, Louisiana 70879-8379

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
P.O. Box 30509
District Counsel
New Orleans, LA 70190-0509

Internal Revenue Service
P.O. Box 7346
Centralized Insolvency Operation
Philadelphia, PA 19101-7346

Jefferson Parish Sheriff's Office
PO Box 130
Gretna, LA 70054-0130

Josh Matthews
1510 Woodlan Hwy, Suite A
Belle Chasse, LA 70037-1639

Laurie Martin
Attn: Amalia Burt
400 Poydras, Suite 1812
New Orleans, LA 70130-3347

Loan Partners, LLC
7835 Maple Street
New Orleans, LA 70118-3960

Loretta Hoskins, Pam Rogers, L. Debezies
c/o Eric Nowak
650 Poydras
New Orleans, LA 70130-6101

Louisiana Department of Revenue
P.O. Box 66658
Baton Rouge, LA 70896-6658

Marilyn Alexander
234 Pine Street
New Orleans, LA 70118

| | | |
|---|---|---|
| Newman, Mathis, Brady & Spedale<br>3501 N Causeway Blvd.<br>Suite 300<br>Metairie, LA 70002-3618 | Nidal Jaber<br>c/o Michael Bagneris<br>935 Gravier Street<br>New Orleans, LA 70112-1608 | Office of the U.S. Trustee<br>Region V<br>400 Poydras Street, Suite 2110<br>New Orleans, LA 70130-3238 |
| PRA Receivables Management, LLC<br>P.O. Box 41021<br>Norfolk, VA 23541-1021 | Patrick Garrity<br>1100 Poydras Street, 30th Floor<br>New Orleans, LA 70163-1101 | Prime Import Company, Inc.<br>2325 Manhattan Blvd.<br>Harvey, LA 70058-3450 |
| Prime Imports Company, Inc.<br>c/o- Irl Silverstein, Attorney at Law<br>2901 N. Causeway Blvd. Ste. 307<br>Metairie, LA 70002-4842 | RKLDs, LLC<br>Robert Harvey<br>600 N. Carrolton<br>New Orleans, LA 70119-4707 | RoundPoint Mortgage Servicing Corporatio<br>Attn: Bankruptcy<br>Po Box 19409<br>Charlotte, NC 28219-9409 |
| Scott Weiss<br>6409 Congress Avenue, Suite 100<br>Boca Raton, FL 33487-2853 | Sewerage and Water Board of NOLA<br>625 St. Joseph St<br>New Orleans, LA 70165-6501 | Silverstein Law Firm<br>2901 N. Causeway Blvd, Suite 307<br>Metairie, LA 70002-4842 |
| Southern Loan Servicing<br>2325 Manhattan Blvd.<br>Harvey, LA 70058-3450 | Succession of Abner Tritt<br>c/o Session, Fishman, Nathan & Israel,<br>400 Poydras, Suite 2550<br>New Orleans, LA 70130-3292 | Sun Premium Financing, LLC<br>3525 N. Causeway Blvd, Suite 900<br>Metairie, LA 70002-3638 |
| Synch/Home Design Plus<br>Attn: Bankruptcy<br>Po Box 965060<br>Orlando, FL 32896-5060 | Synchrony Bank<br>Attn: Bankruptcy Dept<br>Po Box 965060<br>Orlando, FL 32896-5060 | Synchrony Bank<br>c/o PRA Receivables Management, LLC<br>PO Box 41021<br>Norfolk VA 23541-1021 |
| Synchrony Bank/Brook Brothers<br>Attn: Bankruptcy<br>Po Box 965060<br>Orlando, FL 32896-5060 | Synchrony Bank/Lowes<br>Attn: Bankruptcy<br>Po Box 965060<br>Orlando, FL 32896-5060 | Td Auto Finance<br>Attn: Bankruptcy<br>Po Box 9223<br>Farmington Hills, MI 48333-9223 |
| Tommy Ngo<br>c/o Trieu Law, LLC<br>537 Holmes Blvd., Suite A<br>Gretna, LA 70056-2838 | Transunion<br>P.O. Box 2000<br>Chester, PA 19016-2000 | Troy Najar<br>1021 Euterpe Street<br>New Orleans, LA 70130-4123 |
| (p)TRUSTMARK NATIONAL BANK<br>P O BOX 1928<br>BRANDON MS 39043-1928 | Wells Fargo<br>P.O. Box 14547<br>Des Moines, IA 50306-3547 | Wells Fargo Bank, N.A.<br>PO Box 10438, MAC F8235-02Y<br>Des Moines, IA 50306-0438 |
| Gerard McGovern<br>2220 Broadway St.<br>New Orleans, LA 70118-5410 | Jonathan R. DeTrinis<br>DeT Law Firm, LLC<br>4000 Bienville Street, Suite C-1<br>New Orleans, LA 70119-5163 | Laurie Martin<br>Kelly Hart Pitre<br>400 Poydras Street<br>Suite 1812<br>New Orleans, LA 70130-3347 |

| | | |
|---|---|---|
| Office of the U.S. Trustee | Richard W. Martinez | Richard W. Martinez |
| 400 Poydras Street | Richard W Martinez, APLC | Richard W. Martinez, APLC |
| Suite 2110 | 3500 N. Hullen St. | 3500 North Hullen |
| New Orleans, LA 70130-3238 | Metairie, LA 70002-3420 | Metairie, LA 70002-3420 |

| | |
|---|---|
| S. J. Beaulieu (ttr) Jr. | Wilbur J. (Bill) Babin Jr. |
| 433 Metairie Road | 3027 Ridgelake Drive |
| Suite 515 | Metairie, LA 70002-4924 |
| Metairie, LA 70005-4333 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Home Point Financial Corporation | AmeriCredit Financial Services, Inc. | Chase Card Services |
| Attn: Bankruptcy Department | dba GM Financial | Attn: Bankruptcy |
| 11511 Luna Road | P O Box 183853 | Po Box 15298 |
| Farmers Branch, TX 75234 | Arlington, TX 76096 | Wilmington, DE 19850 |

| | | |
|---|---|---|
| City of New Orleans | Gulf Coast Bank & Trust | Hancock Whitney Bank |
| Department of Finance/Bureau of Revenue | 200 St. Charles Avenue | Attn: Bankruptcy |
| 1300 Perdido St., Room 1W15 | New Orleans, LA 70130 | Po Box 4019 |
| New Orleans, LA 70112 | | Gulfport, MS 39502 |

| | | |
|---|---|---|
| (d)Home Point Financial Corporation | (d)Home Point Fncl Corp | Internal Revenue Service |
| Attn: Bankruptcy Department | Attn: Bankruptcy | P.O. Box 21126 |
| 11511 Luna Road | 11511 Luna Rd, Ste 200 | Centralized Insolvency Operation |
| Farmers Branch, TX 75234 | Farmers Branch, TX 75234 | Philadelphia, PA 19101-7346 |

| |
|---|
| Trustmark National Bank |
| Attn: Bankruptcy |
| Po Box 291 |
| Jackson, MS 39205 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Bayou Bywater Living, LLC | (u)Jose Juan Rosete a/k/a Gilberto Rivieras | (d)Loan Partners, L.L.C. |
| | | 1510 Woodland Hwy. |
| | | Ste. A |
| | | Belle Chasse, LA 70037-1639 |

| | | |
|---|---|---|
| (d)PRA Receivables Management, LLC | (d)Prime Imports Co, Inc | (u)South Claiborne Holdings, LLC |
| PO Box 41021 | 2325 Manhattan Blvd. | |
| Norfolk, VA 23541-1021 | Harvey, LA 70058-3450 | |

(u)South Johnson Street Holdings, LLC          (u)Webster Street Holdings, LLC          (u)Barbara Rivera-Fulton

End of Label Matrix
Mailable recipients    94
Bypassed recipients     9
Total                 103

E-FILED: 8/10/2022 9:48:53 PM

# COURT OF APPEAL

# FOURTH CIRCUIT

# STATE OF LOUISIANA

---

### DOCKET NO. 2022-C-0522

---

### CARROLLTON & OAK LLC

### VERSUS

### NGA NGUYEN, ET AL

---

## THE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

## CASE NO. 2017-0000972 DIVISION "F"

## THE HONORABLE JENNIFER M. MEDLEY,

## PRESIDING JUDGE

---

## APPLICATION FOR SUPERVISORY WRIT CHALLENGING TRIAL COURT JUDGMENT ON CROSS-MOTIONS: GRANTING PLAINTIFF TENANT'S MOTION ON DIRECTED VERDICT, AND DENYING LANDLORD'S MOTION FOR INVOLUNTARY DISMISSAL ON DIRECTED VERDICT

---

**JUSTIN ASHER ZITLER**
Bar No. 18517
4819 Constance Street
New Orleans, Louisiana 70119
Telephone: 504-782-5206
Email: jazitler@bellsouth.net

**CONNIE P. TRIEU**
Bar No. 30312
1800 Carol Sue Ave., Ste 7
New Orleans, Louisiana 70056
Telephone: 504-301-4525
Email: ct@trieulawfirm.com

**Attorney for Connie P. Trieu & Appellate counsel for Mr. Ngo**

**Trial Attorney for Tommy Ngo**

1



EXHIBIT
" A "
63 PGS IN GLOBO

# **TABLE OF CONTENTS**

E-FILED: 8/10/2022 9:48:53 PM

COVER SHEET.......................................................................... 1

TABLE OF CONTENTS............................................................... *i*

APPENDIX................................................................................ *ii*

EXHIBIT LIST.......................................................................... *iii*

TABLE OF AUTHORITIES......................................................... *v*

JURISDICTIONAL STATEMENT................................................ 2

STATEMENT OF RELEVANT FACTS.......................................... 3

ASSIGNMENT OF ERRORS....................................................... 7

QUESTIONS PRESENTED FOR REVIEW..................................... 7

SUMMARY OF THE ARGUMENT............................................... 8

LAW AND ARGUMENT............................................................. 9

    A. RELEVANT BACKGROUND ON *DE NOVO* REVIEW................. 9

        A.1. OPTION TO PURCHASE GRANTED APRIL 24, 2014       9

        A.2. THE OPTION TO PURCHASE EXPIRES WITH UNPAID PROMISSORY NOTE END OF APRIL, 2019............................ 10

        A.3. WHAT A LONG, STRANGE TRIAL IT'S BEEN................... 12

    B. THE PROMISSORY NOTE DUE APRIL 24, 2019 AND THE THREE DEFENSES THERETO, ON *DE NOVO* REVIEW......................... 14

        B1. DEFENSE #1: ONE MAKER OF THE NOTE SWORE THE NOTE REALLY DIDN'T MEAN WHAT IT SAID....................... 14

        B.2. DEFENSE #2: THE APRIL 9, 2019 RECEIPT EXTINGUISHED (OR EFFECTUATED FORBEARANCE OF) THE OBLIGATION UNDER THE NOTE............................................................. 16

        B.3. DEFENSE #3: "EVERYONE" THOUGHT THE FOURTH CIRCUIT SAID SO................................................................ 17

    C. CODAL LAW UNDER LA.C.C. ARTICLE 2628 AND LEASE PROVISIONS READ *IN PARI MATERIA*................................... 20

    D. *JURISPRUDENCE CONSTANTE UNDER LA.C.C. ART. 2628*........... 23

        1. REGARDING OPTIONS TO PURCHASE EMBEDDED WITHIN A LEASE OF IMMOVABLE............................................... 23

E-FILED: 8/10/2022 6:48:53 PM

2. LONG-HELD POLICIES UNDERLYING THE *JURISPRUDENCE CONSTANTE*.................................... 26

E. PERVASIVE ABUSES OF DISCRETION AND/OR FUNDAMENTAL MISCONCEPTIONS OF RELEVANT LAW....... 27

F. CONCLUSION AND PRAYER FOR RELIEF............................ 28

VERIFICATION AFFIDAVIT AND CERTIFICATE OF SERVICE.......... 29

## APPENDIX

| | |
|---|---|
| August 10, 2021 | Fourth Circuit Opinion reversing, in part, grant of partial summary judgment awarded below on behalf of Plaintiff |
| April 5, 2022 | Applicant's written Motion for Involuntary Dismissal on Directed Verdict, filed April 5th. [Plaintiff's verbal motions included in Exhibits: Transcript Excerpts] |
| May 23, 2022 | Judgment on cross-motions on Directed Verdict and Reasons for Judgment (Clerk's mailing date May 26, 2022) |
| June 27, 2022 | Timely Signed Notice of Intent to take Supervisory Writ |
| June 27, 2022 | Timely Signed Motion and Order for 20-day Extension of Time |
| July 18, 2022 | Order of 10-day extension of return date (Fourth Circuit) |
| July 29, 2022 | Writ application filing failure under URCA 4-5 |
| August 5, 2022 | 5-Day Order in #2022-C-0522 to file substantial supplement of Application by August 10, 2022 |
| August 10, 2022 | Timely filing of compliant Writ Application with Appendix, and Exhibits thereto. |

**EXHIBIT LIST**

E-FILED: 8/10/2022 9:48:53 PM

**A** **21 pages** *in globo*: Lease with Option to Purchase, dated April 24, 2014 ("LWOTP"), last page is "Promissory Note"

**B** **8 pages** *in globo*: Ngo's Answer and Reconventional Demand against C&O LLC, filed March 10, 2020, with April 24, 2014 Promissory Note attached thereto.

**C** **1 page**: Receipt of April 9, 2019

**D** TRIAL TRANSCRIPTS:

    1. **March 15, 2021 Court Transcript (Zoom Hearing – Complete Transcript)**

    2. **March 30, 2022 Court Transcript**
       a. Pages 1-2; Cover page and Appearances
       b. Pages 9-17; excerpts – Tim Hand as Notary on Promissory Note
       c. Pages 18-22; excerpts – Attorney Bagneris' Opening Statement
       d. Pages 23-40; excerpts – Attorney Trieu's Opening Statement
       e. Pages 41-47; excerpts – Attorney Bagneris' Motion for Directed Verdict; Attorney Trieu's response
       f. Page 61; excerpts – Attorney Bagneris' Cross of Mr. Ngo on Lease with Option to Purchase
       g. Pages 66-75; excerpt – April 19th Receipt
       h. Pages 80-81; Reporter's Page and Reporter's Certificate

    3. **March 31, 2022 Court Transcript** (Morning Session - Complete Transcript)

    4. **March 31, 2022 Court Transcript (Afternoon Session)**
       a. Pages 1-2; Cover Page and Appearance
       b. Pages 3-7; excerpt – Judge Medley clarifies Attorney Trieu's removal
       c. Pages 72-90; excerpt – Judge Medley allows Attorney Trieu back into courtroom
       d. Pages 92-95; excerpt – 2011 Commercial Lease on Juicy D's; First Right of Refusal
       e. Pages 99-101; excerpt - ,
       f. Pages 132-133; excerpt –
       g. Pages 144-145; excerpt –
       h. Pages 159-160; Reporter's Page and Reporter's Certificate

    5. **April 5, 2022 Court Transcript**
       a. Pages 1-2; Cover page and Appearances
       b. Page 3
       c. Pages 18-26
       d. Pages 25-31
       e. Pages 34-35
       f. Page 45
       g. Pages 49-53
       h. Page 58
       i. Pages 62-65

E-FILED: 8/10/2022 9:38:53 PM

j. Pages 72-97
k. Pages 117-121
l. Pages 125-127
m. Pages 129-137
n. Page 143
o. Page 146
p. Pages 148-166
q. Page 187
r. Pages 198-206
s. Page 209
t. Pages 230-231
u. Pages 233-235
v. Page 250
w. Pages 257-258; Reporter's Page and Reporter's Certificate

**6. April 11, 2022 Court Transcript**
   a. Pages 1-2; Cover Page and Appearances
   b. Pages 13-45
   c. Pages 124-132
   d. Pages 135-141
   e. Pages 156-168
   f. Pages 213-225
   g. Pages 265-274
   h. Pages 278-279; Reporter's Page and Reporter's Certificate

**7. April 12, 2022 Court Transcript**
   a. Pages 1-2; Cover Page and Appearances
   b. Pages 3-32
   c. Pages 50-51 Reporter's Page and Reporter's Certificate

**8. April 12, 2022 Court Transcript**
   a. Pages 1-2; Cover Page and Appearances
   b. Pages 2-32
   c. Pages 50-51; Reporter's Page and Reporter's Certificate

**E    April 24, 2019 Gerard McGovern/Riverbend Holdings, LLC letter to Mr. Ngo** (2 pages *in globo*)

**F    July 5, 2022 Signed Judgment re: Motion to Strike, For Sanctions, For a Report to the Disciplinary Committee, For An Expedited Hearing and Incorporated Memorandum** (4 pages *in globo*)

## TABLE OF AUTHORITIES

E-FILED: 8/10/2022 9:46:53 PM

### Cases

*Am. Bank v. Saxena*, 553 So.2d 836 (La. 1989)..................................................15

*Becker and Assoc. Inc. v. Lou-Ark Equipment Rentals, Inc.*,
331 So.2d 474 (La.1976)..................................................................22, 27

*Bristor v. Christine Oil & Gas Co.*, 71 So. 521, 139 La. 312 (1916).................22

*Bubola v. Stutts*, 992 So.2d 592, 2008-0183 (1st Cir. 2008).............................25

*Buller v. Clark*, 7 So.3d 167 (3rd Cir. 2009)....................................................23

*Crawford v. Deshotels et al.*, 359 So.2d 118 (La.1978)..................................22

*Fontanille v. Robertson*, 2019-1135, 9 (1st Cir. 2020)....................................25

*Gueno v. Medlenka,* 117 So.2d 817, 238 La. 1081 (1960)...............................26

*Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc.*,
396 So.2d 878 (La.1981)..................................................................2, 6

*Joffrion v. Gumbel*, 48 So. 1007, 123 La. 391 (1909)..................................26

*Kinberger v. Drouet*, 90 So. 367, 149 La. 986 (1922)............................22, 24

*Landau v. Groves*, 397 So.2d 866, 868 (4th Cir. 1981)................................24

*Malone v. Dayline, Inc.*, 2007-1158 (3rd Cir. 2008)....................................26

*Merchants Trust & Savings Bank v. Don's International*, 538 So.2d 1060
(4th Cir. 1989)..................................................................................16

*Pruyn v. Gay*, 106 So. 536, 159 La. 981..................................................26

*Schluter v. Gentilly Terrace Co.*, 114 So. 586, 164 La. 663 (1927)...............26

*Smith Enterprises, Inc. v. Borne*, 245 So.2d 9 (1st Cir. 1971)..........22, 23, 24, 25

*St. Amand v. Zerangue*, 389 So.2d 804 (3rd Cir. 1980)............................23, 25

*Traffic Scan Network, Inc. v. Winston*, 766 So.2d 557; 98-2428, 4
 (4th Cir. 1999)..................................................................................16

*Youngblood v. Rosedale Dev. Co., L.L.C.*, 911 So.2d 418, 39,939 (2nd Cir.
2005)..........................................................................................11, 14, 17

## Constitutions

E-FILED: 8/10/2022 9:48:53 PM

La. Const. Ann. art. V, §10(a) (1974).........................................................2

## Statutes

**Louisiana Code of Civil Procedure**

La. C.C.P. art. 966(D)...................................................................5, 18

La. C.C.P. art. 1915(A)(5).................................................................2, 6

La. C.C.P. art. 1915(B)(1).................................................................2, 6

La. C.C.P. art. 1915(B)(2).................................................................2, 6

La. C.C.P. art. 2201......................................................................2

## Louisiana Civil Code

La. C.C. art. 1990..............................................................8, 13, 25

La. C.C. art. 1913.................................................................13, 27

La. C.C. art. 1948....................................................................27

La. C.C. art. 2045....................................................................26

La. C.C. art. 2046....................................................................26

La. C.C. art. 2050.................................................................22, 25

La. C.C. art. 2053....................................................................22

La. C.C. art. 2628............................................2, 11, 12, 21, 22, 23, 27

## Treatises

24 La. Civ. L. Treatise, Sales § 5:34...................................................27

1 La. Prac. Real Est. § 9:28...........................................................27

## JURISDICTIONAL STATEMENT

E-FILED. 8/10/2022 9:48:53 PM

This Court's jurisdiction is provided by Article V, Section 10(a) of the Louisiana Constitution and La. C.C.P. §2201. Here, the Judgment pertains to the issue of liability on directed verdicts for breach of a Lease with Option to Purchase.

> (A)(5) "...Signs a judgment **on the issue of liability when that issue has been tried separately by the court**..." La. C.C.P. §1915(A)(5): However, La. C.C.P. §1915(B)(1) and La. C.C.P. §1915(B)(2) provide:
> **(B)(1): "[it] shall _not_ constitute a final judgment _unless_ it is designated as a final judgment by the court _after an express determination that there is no just reason for delay_.**
> **(B)(2) "In the absence of such a determination and designation, any such order or decision _shall not_ constitute a final judgment for the purpose of an immediate appeal** ..." [emphasis supplied]

Albeit properly invoked here[1], our High Court cautions whether vast supervisory powers _ought be_ exercised. In _Herlitz_[2], invaluable guidelines limit whether scant judicial resources _ought_ be expended on any given writ:

1. Whether there was no dispute of fact to be resolved.
2. Whether the trial court judgment was arguably incorrect;
3. Whether reversal would terminate the litigation;
4. If relief is not available on appeal.

Under L.C.C. §2628, myopia below focused on a narrow question: "whether the option was exercised" by property manager. If key provisions in a 2014 15-year Triple Net Lease are undisputedly violated in year five, resulting in clear termination of said Lease, the option becomes moot. It is not viable within a cancelled Lease. Deterioration of the property since May 1, 2019 falls on Tenant/property manager, not on Landlord. Reversal of the cross-motions would effectively terminate the litigation, as a $7M award against Landlord renders a bond on suspensive appeal realistically unavailable. The Panel can and _should_ entertain the instant writ.

---

[1] See _Appendix, supra:_ The Judgment on liability rendered below on May 23, 2022 (mailed by clerk May 26, 2022), timely filed Notice of Intent to take Supervisory Writ filed June 27, timely grants of 29-day extension of time for Return Date below to July 18, 10-day extension by this Court, filing figure July 29030, 2022, 5-day URCA 4-5 grant to August 10, 2022.

[2] _Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc._, 396 So.2d 878 (La.1981)

2

E-FILED: 8/10/2022 9:48:53 PM

## STATEMENT OF RELEVANT FACTS

### A. NATURE OF THE CASE

The contract at issue is the instrument styled "Lease with Option to Purchase",
executed April 24, 2014, by and between property-owner Tommy Ngo and
Lessee/Optioner Carrollton & Oak, LLC (hereinafter "C&O LLC") concerning the
property located at 1200 S. Carrollton Avenue, New Orleans, Louisiana. The Lease
with Option to Purchase[1], together with the contemporaneously executed Promissory
Note[2] paraphed *Ne Varietur* therewith, is referred to hereafter as the "LWOTP".

Commonly known as a "triple-net lease", the LWOTP recites the duties and
responsibilities of the "Tenant", in addition to the payment of utilities, taxes and
insurance.[3] There is nothing novel, unusual, or remarkable in either of these
instruments.

The Promissory Note (the "Note") executed in the presence of a notary,
Timothy Hand, April 24, 2014 by C&O LLC and specifically, by its two members,
Gerard McGovern and Nidal Jaber[4], in the principal sum of $703,727.49, together
with accrued interest as provided therein, bears a maturity date five years from
execution, April 24, 2019. It is undisputed that at no time on or after April 24, 2019,
the Note's fixed due date, did C&O LLC pay the Note, in whole or in part.

---

[1] Exhibit A (21 pages *in globo*): Lease with Option to Purchase, April 24, 2014
("LWOTP")
[2] Exhibit A: Promissory note, executed April 24, 2014, paraphed *Ne Varietur* with
LWOTP, last page.
[3] See Exhibit B, LWOTP: "Tenant" pays or reimburses Landlord promptly for all
utilities (ARTICLE VI), insurance (ARTICLE XI, XII), and taxes (ARTICLE XIV);
Tenant "shall be responsible for all maintenance and repair to the Leased Premises"
(ARTICLE IX), and "shall proceed to repair...and restore the Leased Premises" in
case of "fire, windstorm or other casualty" (ARTICLE XIII, Sec. 1).
[4] As of the date of trial, Nidal Jaber claimed to be 100% owner of Carrollton & Oak,
LLC. This claim was accepted by the trial court as true and precluded defense
counsel from raising the issue further. Defense counsel was also precluded from
inquiring into Gerard McGovern's bankruptcy proceedings or Nidal Jaber's Petition
for Damages against Mr. McGovern concerning the LWOTP.

Under the terms of the LWOTP, non-payment of the Note when due

E-FILED: 8/10/2022 9:48:53 PM

constitutes an "Event of Default".[5] The Note provides that C&O, LLC "waives

presentment for payment, demand, protest and notice of non-payment of this note".[6]

Article XVII of the LWOTP, "Remedies", provides that Landlord Mr. Ngo has "the

full right, at [his] option to cancel this lease effective immediately" on "the

happening of any event of default in Article XVI." Regarding any notice

requirements arising from Mr. Ngo's exercise of his right:

> "…reenter the leased premises and relet for the price and terms as may
> be available **without notice** or other proceedings, **tenant by this
> agreement assenting to this right and expressly waiving the
> necessity of any notice to vacate."** (emphasis added).[7]

Pursuant to the above terms of the LWOTP, and by operation of law upon the

arrival of a fixed term,[8] the fifteen year Lease was canceled or terminated by

operation of law and contract, upon C&O LLC's default on the five year Note,

without formal notice or legal proceedings. Years before trial, Mr. Ngo pleaded the

above facts and allegations,[9] notwithstanding the trial judge's adamant

proclamations berating counsel for their non-existence.

At trial, C&O LLC advances three defenses to non-payment of the Promissory

Note as an event of Default under Art. XVI (b.), spelled out and rebutted in Law and

Argument:

The district court accepted all three putative defenses to C&O LLC's

nonpayment of the Note. The court below barred defense counsel from admitting the

Promissory Note, proffering the Promissory note, allowing the testimony of the

---

[5] LWOTP Article XVI, Events of Default, (b.): "Tenant fails to pay the Promissory
Note executed this same date payable to Landlord, in accordance with its terms."
[6] See Exhibit A, Promissory Note.
[7] LWOTP Article XVII.
[8] La. C.C. §1990
[9] See Exhibit "B", "C" (5 pages *in globo*): On March 9, 2020, Reconventional
Demand (Count I, esp. Para. III-V) filed by Ngo against C&O LLC.

E-FILED: 8/10/2022 9:48:53 PM

Notary subscribing the Note, the co-maker of the Note, and prohibited cross-examining Mr. Jaber on *anything* that occurred prior to April 30, 2019.

However, the Note was attached to Exhibit C, *supra*, and is submitted herewith. Termination of the lease "for any reason whatsoever" "automatically terminates" the 2014 grant to C&O LLC of an exclusive option to purchase.[10]

## B. ACTION OF THE TRIAL COURT AND DISPOSITION

On April 5, 2022, at the close of plaintiff's case-in-chief, Tommy Ngo filed a Motion for Involuntary Dismissal on Directed Verdict in which he argued that as a matter of law and interpretation of contracts, the case at bar is deceptively simple.

The trial court denied Mr. Ngo's motion here, in Judgment rendered on May 23, 2022 (notice of mailing May 26, 2022) and instead granted C&O LLC's Re-Urged[11] Motion for Directed Verdict, reiterated on oral motion at the close of its case-in-chief on April 5, 2022. The court's sole finding (which no party contested) was that C&O LLC "did not exercise the Option to Purchase real property subject to said Lease with Option to Purchase".[12]

The court below deemed irrelevant whether the Option to Purchase was available to exercise in the first place, and if, when and under what circumstances the Option was rendered non-viable, such that the choice to exercise it had expired.

The Fourth Circuit's August 10, 2021 Opinion found that Nidal Jaber "failed to meet his initial burden under La. C.C.P. art 966(D) to show with undisputed facts that it did not exercise the option to purchase." Under any fair reading of the opinion, the prior Panel of this Court did not reach, entertain, or consider C&O LLC's later

---

[10] LWOTP Article XVIII, Section 25, Subsection (f): "...*See also jurisprudence constante* researched herein to the same effect,

[11] Exhibit D(2)(e); Verbal motion for Directed Verdict by Mr. Bagneris, directly after Mr. Ngo's opening statement at trial. The timing strongly indicating correctly that he believed there were no genuine material issues to go to the trier of fact in this matter. With that, Mr. Ngo concurs.

[12] See Appendix, May 23, 2022 Judgment

construction that the Note's stated due date of April 24, 2019 was modified by that

E-FILED: 8/10/2022 9:48:53 PM

Opinion to some other, unspecified date in the future.

The trial court found C&O LLC's case-in-chief "so compelling" that Mr. Ngo's case was "declared moot". Ngo's written motion was denied below because it "would have bared *[sic]* no weight in consequence or consideration in comparison to the evidence offered in favor of granting the *Re-urged Motion for Directed Verdict*."[13] The judgment rendered May 23, 2022, presumably as bifurcated under L.C.C.P. §1915(A)(5), was not designated as final for immediate appeal with no just cause for delay, under L.C.C.P. §1915 (B)(1)(2)

Finally, the instant application meets the burden of the *Herlitz* factors counseling *for* consideration, insofar as the reversal sought herein as a matter of law will effectively terminate the litigation, and a suspensive appeal bond to secure appellate review of an adverse seven-million-dollar judgment is impractical, if not financially infeasible.

---

[13] May 23, 2022 Reasons for Judgment, *see APPENDIX*, from which this Court may gain much-needed insight into the mindset of the judge below.

## ASSIGNMENTS OF ERROR

E-FILED: 8/10/2022 9:48:53 PM

1. The trial court erred as a matter of law and contractual construction, by failing to apply Article XVI (b) to Tenant's non-payment of Promissory Note when due five years from its execution, on its own terms, as an event of default resulting in cancellation of the fifteen-year Lease, without notice or legal proceedings, as waived by Tenant in Article XVII.

3. The trial court erred as a matter of law and contractual construction, by failing to recognize that the Option to Purchase automatically terminated upon termination or cancellation of the Lease "for any reason whatsoever" under Article XVIII, Section 25(f).

## QUESTIONS PRESENTED FOR REVIEW

1. Whether the court below erred as a matter of law and contractual construction, in granting Tenant's Motion for Directed Verdict as against Landlord, as re-urged.

2. Whether the court below erred as a matter of law and contractual construction in denying Landlord/Applicant's cross-motion for Involuntary Dismissal on Directed Verdict as against Tenant.

## SUMMARY OF THE ARGUMENT

E-FILED. 8/10/2022 9:48:53 PM

Mr. Ngo contends that the Note executed by C&O LLC on April 24, 2014 was due and exigible on April 24, 2019, the due date provided on the face of the Note as well as by operation of law under La. C.C. §1990. Section 25(c ) of Article XVIII of the LWOTP provides that the due date of the Note was five years from date of execution. The term of the Lease was fifteen years, absent default.

It is undisputed that C&O LLC failed to pay the Note when due *on its own terms*, April 24, 2019, an event of non-curable default under Art. XVI (b) of the LWOTP. The Lease itself was thereby immediately cancelled by operation of law,[1] without necessity of Tenant-waived notice or legal proceedings under Art. XVII.

Termination of the term of the Lease also acted to "automatically terminate" C&O LLC's Option to Purchase under Article XVIII, Section 25, Subsection (f):

"further, this option is valid for only so long as the Lease is effective and shall automatically terminate if this lease is ever terminated or cancelled for any reason whatsoever..."

The trial court limited trial issues to:

(1)     Whether C&O LLC exercised its Option to Purchase the property located at 1200 S. Carrollton Avenue; and
(2)     Damages owed to either party.

The trial court failed to consider whether the option granted to C&O LLC on April 24, 2014 was even viable after the due date of the Note came and went, such that the choice to exercise the Option was not even available to C&O LLC after the default for non-payment of the five-year Promissory Note at the end of April, 2019. The trial court misconstrued the Fourth Circuit's August 10, 2021 opinion, as somehow modifying the due date of the face of the Note from April 24, 2019 to some other unspecified date in the future.

---

[1] La. C.C. § 1990

E-FILED: 8/10/2022 9:48:53 PM

**LAW AND ARGUMENT**

## A. RELEVANT BACKGROUND:

The 2014 fifteen-year Lease term in the Lease with Option to Purchase ("LWOTP") terminated due to failure of Tenant to pay the five-year Promissory Note when due, *on its own terms.*[1] Cancellation of the Lease for such non-payment when due under Art. XVI (b) of the LWOTP was contractually assented to by Tenant without notice or legal proceedings under LWOTP, Art. XVII. The Option to Purchase automatically expired due to Lease termination "for any reason whatsoever" upon non-payment of the Promissory Note when due under Art. XVIII, Section 25 (f).

### A.1. OPTION TO PURCHASE GRANTED APRIL 24, 2014

Landlord Tommy Ngo granted an exclusive option to purchase an immovable, embedded within a fifteen-year Triple-Net Lease executed by the parties April 24, 2014. Mr. Ngo granted the option in favor of Lessee/Optionee Carrollton & Oak LLC ("C&O LLC") to purchase the historic "old Whitney" building at the corner of South Carrollton Avenue and Oak Street, with two ground-floor commercial spaces and six residential units on the 2nd and 3rd floors, for a purchase price of $1,750,000.00. The Lessee paid a $300,000 Option Fee in consideration for that exclusive grant, also on April 24, 2014.

The Promissory Note (the "Note"), also executed April 24, 2014 by C&O LLC, specifically by its two members (without operating agreement) in favor of Mr. Ngo, in the principal sum of $703,727.49, together with accrued interest @ 3% per annum, bears a maturity due date of April 24, 2019.[2]

---

[1] See **Exhibit A (21** pages *in globo*)**:** April 24, 2014 Lease with Option to Purchase, *esp.* Art. XVI (b).
[2] See **Exhibit A, last page, Promissory Note** paraphed *Ne Varietur* with LWOTP.

E-FILED: 8/10/2022 9:48:53 PM

Cash-in-hand payment of the Option Fee of $300,000 and contemporaneous execution of the Note, provided Mr. Ngo with reasonable assurance of Lessee/Optionee's serious intent to timely exercise the five-year grant of Option to Purchase the old Whitney Bank building for the price of $1,750,000.00, under terms and conditions clearly set forth in Section 25 (a-f) of Article XVIII of the LWOTP, to wit:

> The purchase price of $1,750,000.00, among other logistical conditions for exercise of the option pursuant to Art. XVIII, Sec. 25 (a-f), is comprised of three parts (subsection (c)):
> 1) a $300,000.00 "Option Fee" paid at 2014 closing, credited to Purchase Price;
> 2) Payment in full when due (on April 24, 2019) of the five-year Promissory Note for $703,727.49, accruing simple interest at 3% *per annum* (paraphed *Ne Varietur* with the LWOTP), and;
> 3) Payoff to Lender Gulf Coast Bank & Trust Company of the balance at closing of exercised option, said principal balance being reduced by five years of payments from the amount of $753,233.04, as stated upon execution of the LWOTP.[3]

## A.2. THE OPTION TO PURCHASE EXPIRED END OF APRIL, 2019

After an April 9, 2019 payment to Mr. Ngo by C&O LLC of $45,083.27, ostensibly curing five months of rental arrearages through April 30, 2019,[4] the proverbial excrement hit the fan. C&O LLC declared the option not exercised, the Note not due, and its occupancy under the Lease in full force and effect; Landlord Ngo declared the unpaid note an event of default under Art. XVI (b), and the Lease cancelled forthwith, without notice or legal proceedings under Art. XVII; C&O LLC refused to surrender the premises, alleging violation of quiet enjoyment under Art. XVIII, Sec. 2.[5]

---

[3] See **Exhibit A, Art. XVIII, Sec. 25 (c)(f)**. The finding below that C&O LLC did not exercise the Option to Purchase is not, and has never been contested. The underlying issue, whether the Option was *viable to be exercised*, after the Lease was terminated due to non-payment of the Note, was forcefully excluded by the trial court, for no conceivable reason whatsoever.
[4] **Exhibit C**, Receipt dated April 9, 2019.
[5] See **Exhibit B, Art. XVIII, Section 2. Covenant of Quiet Enjoyment**. The Tenant, subject to the terms and provisions of this lease, *on payment of the rent*

10

Further, Mr. Ngo maintained that his 2014 grant of exclusive Option to

E-FILED: 8/10/2022 9:48:53 PM

Purchase expired automatically upon Lease termination, precluding the possibility

of C&O LLC's exercise thereof, under Art. XVIII, Sec. 25(f). Protracted litigation

ensued. During what has amounted to nearly seven years of legal proceedings, the

Old Whitney building has remained all but vacant.

For over three years 1200 S. Carrollton Ave. has been out of the flow of

commerce, excepting one restaurant forced to shut down in March, 2022, as the

result of C&O LLC's ersatz demand for (apparently) a substantial rent hike.

Louisiana law has resolved fact scenarios far more complex than this, with

far fewer writs, far less acrimony between bench and bar, and far more consistency

with established law and policy.[6] Incredulously, a prolonged bench trial here

produced a damage award[7] of seven million ($7,000,000.00) dollars, in favor of

property manager/Tenant as against Landlord.

As will be shown, the trial court continuously erred in disallowing evidence

or argument supporting allegations III-VI of Tommy Ngo's March 9, 2020

Reconventional Demand against C&O LLC, throughout trial.[8]

---

*and on observing, keeping and performing all of the terms and provisions of this lease on its part to be observed,* must lawfully, peaceably and quietly have, hold, occupy and enjoy the Leased Premises during its term without hindrance or ejection by any persons lawfully claiming under the Landlord.

[6] E.g., *Youngblood v. Rosedale Dev. Co., L.L.C.*, 911 So.2d 418, 420 (2 Cir. 2005) "According to the clear language of the option at issue, unhampered by the ten-year limitation mandated by Louisiana Civil Code article 2628, defendant could purchase 12 acres every three years until achieving complete ownership of the estate, thus leaving the last 12-acre plot out of the stream of commerce for approximately 73 years. Plaintiffs argue that this is beyond their life span, and it was not their intention when they made the contract to tie up the property beyond their natural lives." **Much like here, where the trial court would defer title transfer (and payment of the Promissory Note) under the Option to Purchase to a day shy of twenty years, probably beyond the lifetime of an elderly Mr. Ngo.**

[7] **Writ # 2022-CM-0534**

[8] **Exhibit B (8 pages in globo):** Tommy Ngo's March 9, 2020 Reconventional Demand. *N.B.* – The Promissory note, executed April 24 2014 by C&O LLC in favor of Tommy Ngo. This the pleading declared non-existent in the court below.

### A.3. WHAT A LONG, STRANGE TRIAL IT'S BEEN

E-FILED: 8/10/2022 9:48:53 PM

The Lease terminated upon the event of default in Art. XVI (b) at midnight on April 30, 2019. The grant of Option to Purchase automatically expired therewith, unexercised.[9] A reversal on the cross-motions here effectively terminates the instant litigation; the damage award to Tenant below commenced May 1, 2019.[10]

Central to the case below was the length of term granted in the LWOTP to Lessee/Optionee during which time period it enjoyed the exclusive right to exercise the option to purchase. The Court correctly found that Optionee Carrollton & Oak LLC did not *in fact* exercise the option within five years from the grant thereof, or by the end of April 2019, nor at any time thereafter.[11] Further, it was undisputed that payments to Lessor for monthly rental, taxes, insurance, and maintenance obligations Lessee had undertaken in the 2014 Triple-Net Lease, were not paid by Lessee/Optionee for any month subsequent to April, 2019.

The trial court, without analysis of relevant Lease provisions, rules of construction, nor citation to La. C.C. §2628, promptly *tossed* the Option to Purchase into the fifteen-year term of the Lease. The evidence is undisputed that C&O LLC failed to pay the Note when due, five years from its date of execution. It is difficult to conclude that such failure to pay in a timely manner is anything other than an event of default under Art. XVI (b).[12] In consequence, Lease termination of

---

[9] **APPENDIX:** Landlord's Motion for Involuntary Dismissal on Directed Verdict.
[10] **Exhibit A:** LWOTP, Article XVIII, Section 20. **Surrender of Premises**. At the expiration of the tenancy created by this agreement, Tenant must surrender the Leased Premises in the **same condition as the leased premises was in on delivery of possession to the Tenant under this lease, reasonable wear and tear accepted**, ... **Tenant's obligation to observe or perform this covenant survives the expiration or other termination of the term of this lease**. [Emphasis supplied]

[11] A stipulation of fact acceding to this proposition does not appear to have been difficult to achieve, had it been requested by the court below.
[12] **Exhibit A:** Art. XVI (b)

12

the LWOTP "**automatically terminates**" the option to purchase under well-settled

E-FILED: 8/10/2022 9:48:53 PM

*jurisprudence constante*, and additionally, under Art. XVIII Sec. 25 (f).[13]

C&O LLC's failure to pay the Note when due five years from its execution

constitutes a default under the LWOTP.[14] C&O LLC's nonpayment on the date

fixed for its maturity unsurprisingly constitutes a default by operation of law:

> "When a term for the performance of an obligation is either fixed, or
> is clearly determinable by the circumstances, **the obligor is put in
> default by the mere arrival of that term**. In other cases, the obligor
> must be put in default by the obligee, but not before performance is
> due."

La. C.C. art. 1990 [emphasis supplied]

One finds it helpful to focus on the undisputed facts, the LWOTP, the Note

paraphed *Ne Varietur* therewith, the relevant law and jurisprudence thereunder. If

affirmed by the Panel on *de novo* review, such self-serving defenses to the

Promissory Note successfully advanced below, would *wreak havoc* for every

Lender holding a Note (or a "balloon payment" within a Note), as the principal

contract to which an accessory security contract of mortgage is attached. La. C.C.

§1913.

Although Landlord granted an option to purchase in 2014 that *could have

been* co-extensive with the fifteen-year term of Lease,[15], there exists a glaring

suspensive condition unambiguously stated in the Lease under which the term of

the Lease at bar terminates prematurely: the Promissory Note remaining unpaid

five years from its execution.[16]

---

[13] **Exhibit A**: Art. XVIII Sec. 25(f), in pertinent part: "this option is valid for only
so long as the Lease is effective and shall **automatically terminate** if this lease is
ever terminated or cancelled for any reason whatsoever" (emphasis added).

[14] **Exhibit A**: Art. XVI (b)

[15] **Exhibit A: Article XVIII: Section 25**, "at any time during **the term** of this
Lease, Landlord grants to Tenant the exclusive right, privilege and option to buy
and purchase...the Leased Premises ... **upon the terms hereinafter set forth**."

[16] **Exhibit A**: *See* Article XVI, "The following events are deemed events of
default under this Lease: b. Tenant fails to pay the Promissory Note executed
this same date payable to Landlord, *in accordance with its terms.*"

13

E-FILED 8/10/2022 9:48:53 PM

To "gain insight" into the reasons provided by the court below in support of its May 23, 2022 rulings on the cross-motions for involuntary dismissal and/or directed verdict, it is convenient to juxtapose a pertinent paragraph therefrom in stark contradiction to the deceptively simple issues at bar.

> "The Lease Agreement between the parties provides for a fifteen-year term that commences on April 24, 2014, and it set to expire on April 24, 2029. The Lease Agreement provided Plaintiff, Carrollton & Oak, LLC, **may at any time during this fifteen-year term, exercise the Option to Purchase** the property at issue… **Should Plaintiff,** Carrollton & Oak **in fact exercise the Option** contained in the Lease Agreement, **Plaintiff will have five years to purchase the subject property**. *Judgment on Damages, rendered, May 23, 2022, Reasons for Judgment, Paragraph 2.* [Emphasis supplied][17]

The fundamental error below was to assume[18] the fifteen-year Lease term was still in full force and effect at time of the 2022 trial, even after the April 24, 2019, when the allotment of time due date to pay the Note came and went without fulfillment, thereby sharply curtailing "this fifteen-year term.". *Id.*

## B. THE PROMISSORY NOTE DUE APRIL 24, 2019 AND THE THREE DEFENSES THERETO

### B.1. DEFENSE #1: ONE MAKER OF THE NOTE SWORE THE NOTE REALLY DIDN'T MEAN WHAT IT SAID

Nidal Jaber, member of C&O LLC, maintains that he and Gerard McGovern signed the Note on April 24, 2014 because Mr. Ngo could not understand the transaction without a signed document. Mr. Jaber contends that he and co-maker

---

[17] **Exhibit A**: Article XVIII: **Section 25. Option to Purchase**. "For and in consideration of the payment of $300,000.00 (the "Option Fee") by Tenant to Landlord upon the execution of this Lease with Option to Purchase, the receipt and sufficiency of which is hereby acknowledged, **at any time during the term of this Lease**, Landlord grants to Tenant the exclusive right, privilege and option to buy and purchase … in its "as-is" condition, **for the price and upon the terms hereinafter set forth**, the Leased Premises:"

[18] Much like the *Youngblood* opinion, *supra*, at fn. 5, the trial court below would erroneously infer intent to defer title transfer (and payment of the Promissory Note) under the Option to Purchase here, to a day shy of twenty years, probably beyond the lifetime of an elderly Mr. Ngo.

Mr. McGovern[19] did not intend to enter into the promissory note until the option to

E-FILED: 8/10/2022 9:48:53 PM

purchase was exercised. In his deposition, Mr. Jaber described the date of

execution as follows:

> Fast forward back to this document [the Promissory Note] right here, again, he wanted something. He's just always worried about his health. He said it in his own deposition, "I got pressure. I got diabetes. I got heart condition. I have this, I have that." He's always worried about passing away or dying and making sure that his children, you know, are taken care of. All the documents are in the proper place, which I think, you know, everybody that has children thinks like that because I'm like that as well. So he requested documentation between Tim and Connie that I want proof of what would this -- what would I be receiving if the five-year lease with an option to purchase was ever exercised? What would my family be receiving? What would they be collecting? I want it in detail. Other than this, there's no way I'm signing anything else. I want to know. I just want to know what it is. He wanted to know the specifics of the dollar amount coming to him, that if the lease with an option to purchase was ever exercised.[20]

In a suit for collection of a promissory note under Louisiana law, the holder of

the note establishes a *prima facie* case by establishing that the maker executed the

note and by producing the note.[21] Once the note is produced (*if* admissible to be

produced), the burden then shifts to the adverse party, who then bears the heavy

burden of proving nonexistence or extinguishment of the obligation.[22]

---

[19] **Exhibit E:** Notice from Riverbend Holding, Inc. (George McGovern, principal). On the face of the Promissory Note, only two other people were present at its execution (besides Jabar) on April 24, 2014: Notary Tim Hand, and Gerald McGovern, the second member of C&O LLC (and co-maker of the Note). Both were subpoenaed, but neither was allowed to testify below. Mr. McGovern demonstrated his understanding of the Note's due date in this 2 page letter, executing a substitute promissory note (ruled inadmissible as irrelevant below, proffer denied) on behalf of Riverbend Holdings, LLC, an affiliate of C&O LLC under LWOTP, Art. XVIII, Section 25(f), notarized on April 24, 2019, as a showing of good faith of Riverbend Holdings, LLC's intent to exercise the option to purchase the property located at 1200 S. Carrollton Avenue, New Orleans, Louisiana.

[20] **Exhibit D(5)(k):** January 27, 2022 Deposition of Nidal Jaber, p. 120, lines 15-25; p. 121, lines 1-16.

[21] See *Am. Bank v. Saxena*, 553 So.2d 836, 842 (La. 1989). Here, the constellation of ruling the Note inadmissible as irrelevant, denying proffer thereof, striking a Proffer List featuring said note (with sanctions), *See infra* last page, and awarding damages in the high seven figures (effectively precluding a suspensive appeal bond), depicts an evidentiary quandary wherein the fault lies not in the stars.

[22] *Saxena*, 553 So.2d at 842 ("When signatures are admitted or established, *production of the instrument* entitles a holder to recover on it unless the defendant

15

Mr. Jaber's claim that he did not intend to bind C&O LLC until an amorphous

E-FILED 8/10/2022 9:48:53 PM

later date fails to meet the steep burden of a viable defense to a Promissory Note. If

it were so simple for a self-serving statement to rise to the level of a defense on a

promissory note, the entire banking and real estate industries would erupt in

protest.

### B.2. DEFENSE #2: THE APRIL 9, 2019 RECEIPT EXTINGUISHED (OR EFFECTUATED FORBEARANCE OF) THE OBLIGATION UNDER THE NOTE

Alternatively, Lessee argues that the obligation it assumed, to timely pay the

Note by April 24, 2019, was cured by a $45,083.27 payment and Receipt thereof,

and signed April 9, 2019 by Mr. Ngo.[23] Clearly, the Receipt acknowledged

payment of periodic monthly rental arrearages, curing those arrearages within sixty

(60) days of Notice under Art. XVI, (a) of the Lease. It is patently absurd to apply

such "cure" to the singular non-periodic payment of over eight hundred thousand

dollars on the Note,[24] an obligation not due until April 24, 2019.

Moreover, that spurious conclusion is unsupported and indeed contradicted

under Art. XVIII, Sec. 21, to wit:

> **Section 21. Accord and Satisfaction**. No payment by Tenant or
> receipt by Landlord of a lesser amount than the monthly rent
> stipulated in this lease is deemed to be other than on account of the
> earliest, stipulated rent, nor will any endorsement or statement on any
> check **or any letter accompanying check or payment as rent be
> deemed an accord and satisfaction**, and **Landlord may accept that
> check or payment without prejudice to Landlord's right to** recover
> the balance of the rent or **pursue any other remedy in this lease
> provided**.

---

establishes a defense."). See also *Traffic Scan Network, Inc. v. Winston*, 766 So.2d
557, 559, 4 (4th Cir. 1999), (citing to *Merchants Trust & Savings Bank v. Don's
International*, 538 So.2d 1060 (4th Cir. 1989)

[23] **Exhibit C:** The April 9, 2019 Receipt
[24] Inclusive of simple interest accruing for five years at 3% per annum, timely
payment of the Note at the end of April, 2019 would amount to over $21,000 per
year and change.

The "other remedy in this Lease provided" is default under Art, XVI (b) for
E-FILED: 8/10/2022 9:48:53 PM

failure to pay the Note when due, which is separate and apart from the "cure" by

accord and satisfaction of the periodic rental remedy under Art. XVI (a).

Moreover, plaintiff below shies away from such purported "cure" being

tantamount to extinguishment of the obligation under the Promissory Note, insofar

as it desires such Note to be viable throughout the fifteen-year term of the Lease in

order to exercise the Option sometime in the future. Rather, the "cure" has

apparently worked some sort of *forbearance* of the due date on the Note.

Such forbearance would defer payment of the Note to just shy of twenty

years (a fifteen-year term of Lease plus exercise of option on the last day thereof,

and an additional five years to pay the Note). Reminiscent of the *Youngblood*

opinion, *supra* at fn. 5, it is highly unlikely that Mr. Ngo intended the 5-year

payment term to be extended at the whim of Lessee to twenty years of his aged

life.

Rather than argue over the extent scope of the cure by Receipt, it is

judicially more efficient to assume *arguendo* the plaintiff is correct that the April

9, 2019 Receipt effectuated a forbearance on the due date of the Note. Insofar as

extension of time to pay the Note is wholly within the discretion of the holder (on

the face of the Note), your applicant simply gave a "Grace Period" for payment of

one week, through the end of the "curative period," April 30, 2019.

### B.3. DEFENSE #3: THE FOURTH CIRCUIT TOLD ME SO

On March 15, 2021, the district court heard C&O LLC's Motion for Partial

Summary Judgment and Mr. Ngo's Motion for Summary Judgment on his

Reconventional Demand. The court below granted C&O LLC's motion in part,

ruling that it did not exercise its option to purchase 1200 S. Carrollton Avenue and

*therefore* the five-year term of the Note had not begun to run, whether to

E-FILED: 8/10/2022 9:48:53 PM

"complete the purchase of the property" or not.

This Court opined "that respondent failed to meet its initial burden [under La. C.C.P. art. 966(D)] to show with undisputed facts that it did not exercise its option to purchase" and thus reversed that portion of the district court's judgment.[25]

The district court incorrectly surmised that the 4th Circuit upheld C&O LLC's claim that the five-year period to "complete the purchase of the property" had not commenced on the date of execution of the Promissory Note. For that to be the case, the prior Panel would have had to address the plain terms on the face of the Promissory Note, which it clearly did not. Nor was it proper for the prior Panel to address the Promissory Note at all, insofar as the plaintiff below failed to meet its summary burden of persuasion to show the negative: —that it did *not* exercise the option to purchase.

To read any more than that into the opinion, especially by pinning it on the prior Panel to read out of a Promissory Note, or otherwise modify, its due date at maturity, is an unthinkable form of judicial activism, adamantly not within the orbit of possible characterizations of judicial actions that the Fourth Circuit would deem "just, legal, and proper" on the record without some very deep explanation. There was none.

What the court below has somehow surmised here is totally unsupported by the text and the tenor of the opinion. The Panel simply could not have reached any consideration of the date of maturity on the Promissory Note, nor opined upon the commencement of an Option grant for which no exercise had been proven or not proven. In sum, the antecedent ruling of "no exercise of option" below was reversed.

---

[25] **APPENDIX:** Fourth Circuit Opinion dated August 10, 2021

E-FILED: 8/10/2022 9:46:53 PM

Ironically, many days of trial were wasted due to lack of a factual stipulation that the Option to Purchase had indeed *not* been exercised, just as the prior Panel had opined. The question of greater moment at trial is whether the Option to Purchase was even viable, and thus available to exercise, not whether it had or had not been exercised. Of course it hadn't, as the trial court correctly found.

Perhaps counsel below confused the terms of art "grant" and "exercise,", as related to Options to Purchase an immovable.[26] If so, then all counsel below and the judge below apparently seized upon such confusion rather than correct it. In any event, the prior Panel did not read out the date of maturity on the Promissory Note.

Article XVIII, Section 25(c) of the LWOTP states that the due date of the Note is **"five years from the date of its execution"** as part of the $1,750,000.00 purchase price of the property along with the Option Fee of $300,000.00 paid on April 24, 2019 (credited to the purchase price) and the payoff amount to Gulf Coast Bank & Trust. It is undisputed that the Note was signed by C&O LLC on April 24, 2014 in the presence of a Notary. The due date on both the face of the Note and pursuant to the terms of the LWOTP is April 24, 2019.

The district court incorrectly linked the due date of the Note with C&O LLC's exercise of its option to purchase in finding that the Note would not be due until five years after C&O LLC exercises its option. It is undisputed the C&O LLC did not exercise its option to purchase; however, Mr. Ngo has been precluded from addressing C&O LLC's argument that the exercise of its option is the commencement of the five-year term provided in Article XVIII, Section 25(c) of

---

[26] **Exhibits D** (5)(p); **D** (5)(r) A suggestion made below by (former Judge) Michael Bagneris supports the notion that at least counsel had contended that the Option was exercised on the day it was granted. April 5, 2022 transcript of Nidal Jaber's testimony. See also Judge Bagneris (ret.) recognizing this trial should have been submitted after opening statements by his motion for directed verdict. **Exhibit D (2) (e )**.

the LWOTP, due to the district court's misinterpretation of this Court's Opinion

E-FILED: 8/10/2022 9:48:53 PM

rendered August 10, 2021.

A plain reading of the LWOTP and Note paraphed *Ne Varietur* therewith finds that the due date of the Note is that which is on its face, April 24, 2019. The district court incorrectly read the 4th Circuit to say that the five-year period to "complete the purchase of the property" had not commenced. The Option to Purchase was granted April 24, 2014, contemporaneously with payment of $300,000 by C&O LLC as an Option Fee for and in consideration of such grant. If the "balloon payment" of the approximately $800,000 were not paid in a timely manner, in full, with interest, within five years from the grant, then the term of the Lease was "cancelled or terminated" without legal proceedings. Art. XVI (b.), Art. XVII.

In the event of termination of the Lease term, which undisputedly happened here, the Option became unavailable to exercise, it had expired. It was "automatically terminated" upon termination of the Lease. Art. XVIII, Sec. 25 (f).

## C. CODAL LAW UNDER LCC ARTICLE 2628 AND LEASE PROVISIONS *IN PARI MATERIA*

For the term of the option granted to be deemed co-terminus with the fifteen-year term of the Lease, the Tenant would have had to perform its periodic Lease obligations impeccably under the fifteen-year Commercial Lease and have paid off the Promissory Note by its due date. Here, the term of the Lease never reached its fifteen-year potential, as it was in default after five years for non-payment of the Note. The option must either be limited to the term of a valid Lease *or* expressly stipulate a time period for its exercise. The law permits no middle ground.

> The following events are deemed events of default under this Lease:
> (b.) Tenant fails to pay the Promissory Note executed this same date payable to Landlord, in accordance with its terms.[27]

---

[27] **Exhibit B**: THE PROMISSORY NOTE (IN PERTINENT PART): "The total of principal and accrued interest **shall be paid on or before the *24th* day of April,**

20

E-FILED: 8/10/2022 9:48:53 PM

It is textually demonstrable that the parties clearly chose to impose (and to accept) a relevant condition certain on the fifteen-year Lease term; i.e.— payment of the NOTE in full when due *on its own terms*, five years from commencement of the Lease.[28] Subsequent to missing the "balloon payment" represented by the Note, Lessee's Lease term was cancelled or terminated, *__without notice__*, under the explicit language of the LWOTP, by operation of law and contract.

> **ARTICLE XVII: REMEDIES:** On the happening of any event of default in Article XVI ... Landlord thereafter has the full right... (1) **to cancel this lease effective immediately or as of any date which Landlord may select and retain the Deposit**;... ...(a) ... to **reenter** the leased premises and relet them ... **without notice or other proceedings, Tenant by this agreement assenting to this right and expressly waiving the necessity of any notice to vacate.**

Tracking the statutory language of La. C.C. §2628, Lessee's monthly rental payments were "*no longer required for performance of those obligations*" as of May 1, 2019, due to the Event of Default upon Lessee's failure to pay the Note when due, "on its own terms."[29]

In Section 25 of Art. XVIII in the LWOTP, the court's reading is as follows:

> "The Lease Agreement between the parties provides for a fifteen-year term that commences on April 24, 2014, and it set to expire on April 24, 2029. The Lease Agreement provided Plaintiff, Carrollton & Oak, LLC, **may at any time during this fifteen-year term, exercise the Option to Purchase** the property at issue... **Should Plaintiff**, Carrollton & Oak **in fact exercise the Option** contained in the Lease Agreement, **Plaintiff will have five years to purchase the subject property**. *Judgment on Damages, rendered, May 23, 2022, Reasons for Judgment, Paragraph 2.* [Emphasis supplied][30]

---

*2019*...It is hereby expressly agreed that failure to pay this Note **punctually at maturity shall constitute** *default hereunder...*"

[28] Exhibit A: Article XVI (b) The following events are deemed events of default under this Lease:

(b.) Tenant fails to pay the Promissory Note executed this same date payable to Landlord, *in accordance with its terms.*

[29] **Exhibit A:** LWOTP, Article XVII: Events of Default: Ibid., fn. 27; *Accord*: La. C.C. art. 1990.

[30] **Exhibit A:** Article XVIII: **Section 25. Option to Purchase**. "For and in consideration of the payment of $300,000.00 (the "Option Fee") by Tenant to Landlord upon the execution of this Lease with Option to Purchase, the receipt and sufficiency of which is hereby acknowledged, **at any time during the term of this**

21

E-FILED: 8/10/2022 9:48:53 PM
Any multi-year (or month-to-month, for that matter) Lease may be
terminated prior to the end of its stated term due to any number and
manner of defaults, either under a Lease Agreement or by operation of
law. The Lease at bar was breached by default on non-payment of the
five year Note when due. The Court's reading of the LWOTP, Art. XVIII
Sec. 25 above is merely cursory.[31]

Louisiana Civil Code art. 2628 (with Official Comments)

An option or a right of first refusal that concerns an immovable thing
may not be granted for a term longer than ten years. If a longer time
for an option or a right of first refusal has been stipulated in a
contract, that time shall be reduced to ten years. Nevertheless, if the
option or right of first refusal is granted in connection with a contract
that gives rise to obligations of continuous or periodic performance,
an option or a right of first refusal *__may be granted for as long a
period as required for the performance of those obligations__*
(emphasis added).

(b) **A right of first refusal or an option to buy for a perpetual or
indefinite term is null**. See *Crawford v. Deshotels et al.*, 359 So.2d
118 (La.1978); *Becker and Assoc. Inc. v. Lou-Ark Equipment Rentals,
Inc.*, 331 So.2d 474 (La.1976); *Bristor v. Christine Oil & Gas Co.*,
139 La. 312, 71 So. 521 (1916).

(c) **The failure to expressly state a termination date in an option
or a right of first refusal made part of a lease having a definite
term does not render the option or right of first refusal invalid if
the time for its acceptance is necessarily limited by the term of the
lease.** *Becker and Assoc. Inc. v. Lou-Ark Equipment Rentals, Inc.*, 331
So.2d 474 (La.1976); *Smith Enterprises, Inc. v. Borne*, 245 So.2d 9
(La.App. 1st Cir.1971); *Kinberger v. Drouet*, 149 La. 986, 90 So. 367
(1922).

In gist, La. C.C. §2628 teaches that the validity of an option to purchase an

immovable depends, *inter alia*, on its express statement of a termination date. If an

option states no such termination date, then it is invalid, unless "clothed" by the

---

**Lease**, Landlord grants to Tenant the exclusive right, privilege and option to buy
and purchase ... in its "as-is" condition, **for the price and upon the terms
hereinafter set forth**, the Leased Premises:"
[31] **See La. C.C. §§ 2050, 2053**. As a matter of statutory and contractual
construction, the general grant of option that may be exercised "**at any time
during the term of the Lease**" must be read and modified and conditioned (and be
succumbed) by the more specific "**upon the terms hereinafter set forth**". More
specifically, under Sec. 25(f) the option "**automatically terminates**" if the "**lease
is cancelled or terminated for any reason whatsoever.**"

E-FILED: 8/10/2022 9:48:53 PM

definite term of a lease in which the option is embedded.   Even so, the definite

term of a Lease is often breached by default prior to the expiration of that term.

The court below erroneously concluded, *sans* analysis, the option to

purchase at bar is "clothed" for the full fifteen years of the Lease term, regardless

of breach or default, and thereby falls within the La. C.C. §2628 exception.

> As stated, under the jurisprudence where a lease and option to purchase
> are part of the same agreement, the option is in **full force and effect
> only as long as the lease is in full
> force.** *Smith Enterprises, Inc. v. Borne*, 245 So.2d 9 (1 Cir. 1971).     In
> the present action, since the January, 1977, lease had terminated prior to
> November 4, 1977, when the second lease was entered into, the option
> granted in the first lease also terminated with that lease.
> *St. Amand v. Zerangue*, 389 So.2d 804, 806 (3d Cir. 1980)

The court below erred in applying settled law to the undisputed facts at bar.

### D. JURISPRUDENCE CONSTANTE

Under La. C.C. §2628 the *jurisprudence constante* regarding Options to

Purchase an immovable, where such Options are embedded in a Lease:

### D.1. REGARDING OPTIONS TO PURCHASE EMBEDDED WITHIN A LEASE OF IMMOVABLE

> With regard to the third sentence of Article 2628, providing an
> exception for contracts giving rise to "obligations of continuous or
> periodic performance," we find that an agreement to share expenses is
> not the kind of obligation contemplated in the language of
> the exception. Clark suggests that such a legal obligation that would
> extend the term of a right of first refusal beyond ten years would be a
> mortgage. **The published comments to Article 2628 indicate that a
> lease would be such an obligation.**
> *Buller v. Clark*, 7 So.3d 167, 169 (3 Cir. 2003)

Defendant-in-Reconvention C&O LLC failed to pay the principal and

accrued interest on the Note, or any part thereof, when due, according to the terms

of the Note, on April 24, 2019.[32] Given a grace period of one week by Lessor,

---

[32] *See* **Exhibits A,B:** Promissory Note dated April 24, 2014, paraphed *Ne Varietur*
with the LWOTP.

C&O LLC similarly failed to pay the Note as of the end of the Grace period, April

E-FILED: 8/10/2022 9:48:53 PM

30, 2019.[33]

> *Smith Enterprises, Inc. v. Borne*, 245 So. 2d 9 (1st Cir. 1971), in which an option was appended to a lease that provided for the exercise of the option "at anytime during the term of this lease," which was for one year. 245 So. 2d at 9–10.

> We are also of the opinion that the lease and option to purchase, being part of the same agreement, are inseparable and that, **so long as the lease is in full force and effect, so must be the option**. See *Kinberger v. Drouet*, 149 La. 986, 90 So. 367 (1922).

> *Smith Enterprises, Inc. v. Borne*, 245 So.2d 9 (1st Cir. 1971), *writ refused*, 247 So.2d 393, 258 La. 574 (1971)

The mere existence of a definite term Lease is legally insufficient to

conclude that the option to purchase granted in the contract is "clothed". Failure to

pay the balloon Note when due five years from its execution terminates the Lease,

pure and simple. Termination of the lease term "for any reason whatsoever"

"automatically terminates" the option to purchase."[34] Clear and explicit.

> **ARTICLE XVIII: MISCELLANEOUS PROVISIONS; SECTION 25: OPTION TO PURCHASE (f )**
> … **this option is valid for only so long as the Lease is effective and shall automatically terminate if this lease is ever terminated, or cancelled for any reason whatsoever;**

Failure of the Lessee to pay the Note within the five-year stipulated time

period constitutes an **event of immediate default** under the Lease itself.

> The lease and option to purchase are a part of the same contract and are inseparable. **It therefore follows that the existence of the option rights are dependent upon the lease being in full force and in effect at the time they are sought to be exercised. Once the lease is terminated, as in this instance by eviction, all unexercised option rights are extinguished**.
> *Landau v. Groves*, 397 So.2d 866, 868 (4th Cir. 1981)

---

[33] *See* **Exhibit C:** Receipt, April 9, 2019, assuming *arguendo* such Receipt curing 5 months arrearages of periodic performance somehow punched well above its weight, *also* curing (presumably by forbearance) the due date of April 24, 2019 on the Note "*through April 30, 2019*". Given that the holder, Mr. Ngo, is granted discretion to extend the time for payment, such tortured argument of *cure by Receipt* is tantamount to a mere one-week "Grace Period", the expiration of which coinciding exactly with the May 1, 2019 reclamation of his property.

[34] **Exhibit A:** Article XVI (b.); Article XVIII, Section 25, subsection (f).

24

(citing *St. Amand v. Zerangue*, 389 So.2d 804 (3rd Cir. 1980); *Smith Enterprises, Inc. v. Borne*, 245 So.2d 9 (1st Cir. 1971)).

Here, the Lease succumbed to the event of default for failure of Lessee to pay the Promissory Note when due in five years, *according to its own terms*.[35] Any aberrant reading of the law otherwise, as applied to provisions of the Lease, is without legal foundation and garners no support on the record.

> As a signatory of the Lease-Option Agreement, lessee is charged with knowledge of its contents.[6] The Lease-Option Agreement makes clear that voluntary termination of the lease results in the forfeiture of the option money, such that **the term of the option to purchase is inseparably linked to the term of the lease**. Thus, we find that **the Cancellation unambiguously cancelled the lease, and with it, the option to purchase.** We further note that this interpretation leads to no absurd consequences for the same reasons noted herein with respect to interpretation of the Lease-Option Agreement.

*Fontanille v. Robertson*, 2019-1135, 9 (1st Cir. 2020)

Cancellation of the Lease, without any other notice than mere arrival of started calendar term under La. C.C. § 1990, for failure to pay the Note when due under Art. XVI (b.), is an event of default by operation of law and by contract. Thereupon, the Option "automatically terminates" under Art. XVIII, 25(f).

In *Bubola v. Stutts*, 992 So.2d 592, 2008-0183 (1st Cir. 2008), the plaintiff/lessee and defendant/lessor entered into a lease agreement that also contained a clause, captioned as 'Special Stipulations', that set forth the terms of a option to sell by the lessor.[36] In its discussion of the parties' conflicting interpretations of the lease and the option-to-sell clause, the court held:

> The lease contract is the law between the parties in defining their respective legal rights and obligations. **Each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole**. LA.C.C. §2050.

---

[35] See **Exhibit A, Promissory Note**, paraphed *Ne Varietur* with the instant lease. On its face, the Note matures five years from the grant of the Option, or April 24, 2019.

[36] *Bubola v. Stutts*, 992 So.2d 592, 2008-0183, 2 (1st Cir. 2008).

We are obligated to give legal effect to contracts according to the true intent of the parties. LA.C.C. §2045.[37] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. §2046.

## D.2. LONG-HELD POLICIES UNDERLYING THE *JURISPRUDENCE CONSTANTE*

Well-settled policy considerations, as clarified and distilled over one hundred years of *jurisprudence constante*, ought clearly inform judicial construction of the LWOTP at bar.

One of the most fundamental and deeply rooted principle of law in this state, and almost all civil law jurisdictions, is that it is contrary to public policy to restrict property from the stream of commerce for an indefinite period of time. *Gueno v. Medlenka,* 238 La. 1081, 117 So.2d 817 (La.1960). **After this principle is recognized it becomes essential to determine when a restriction on immovable property is contrary to public policy and thus void, and when such a restriction is valid.**
*Malone v. Dayline, Inc.*, 2007-1158, 4 (3 Cir. 1/30/08)
It is well settled that a contemplated purchaser, under an agreement to sell, who is in default because of failure to make payments in accordance with the terms of contract, cannot compel specific performance of such contract. *Pruyn v. Gay*, 159 La. 981, 106 So. 536; *Joffrion v. Gumbel*, 123 La. 391, 48 So. 1007…
**Plaintiff cannot be permitted to play the role of 'watchful waiting' all of these years, without performing his obligation, and to reap, at this late date, the benefit of it in speculative values.**

As said by this court in *Joffrion v. Gumbel*, 48 So. 1012, 123 Al. 404, 405, quoting a well-recognized rule:
'The general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt, and eager to perform the contract on his part. Therefore unreasonable delay in doing these acts which are to be done by him will justify and require a denial of relief. No rule respecting the length of delay which will be fatal to relief can be laid down, for each case must depend on its peculiar circumstances [citing authorities omitted].'

'It would be an unwarrantable exercise of discretionary power to allow one holding a mere option to purchase to lie by for so long a time and speculate upon the fluctuating values of urban lots, and, after a substantial increase in their value, to enforce a conveyance in his favor at the original price now inadequate."
*Schluter v. Gentilly Terrace Co.*, 164 La. 663, 667–68; *also see* 114 So. 586, 587–88 (1927)

---

[37] *Id.* at 12 (internal citations omitted).

E-FILED 8/10/2022 9:48:53 PM

"Under Civil Code Article 2628 as amended by Act 1005 of 2003 effective July 2, 2003,. This result is different than the result that should be reached for an *option* with an indefinite term, which ought not to be valid at all. The reason a different result should be reached for a right of first refusal is that a right of first refusal is not required to state a term after which the grantor of the right of first refusal need not offer the property to the grantee of the right, **whereas an option is required to stipulate a term in order to be valid**. Moreover, a right of first refusal with an indefinite term, ***unlike* an option, does not keep the property out of commerce and is not struck down with the public policy concerns that strike down an option with an indefinite term.**

'**Article 2628**, which imposes time limits on the duration of options and rights of first refusal, **presupposes the existence of an otherwise valid contract.** Since the Louisiana Supreme Court has held that an option granted in connection with an indeterminate duration lease does not satisfy the basic requirements for an enforceable option...[38] Such an option is invalid under current jurisprudence."
  24 a. Civ. L. Treatise, Sales § 5:34[39] **[Emphasis supplied]**

## E. PERVASIVE ABUSES OF DISCRETION AND/OR FUNDAMENTAL MISCONCEPTION OF RELEVANT LAW

Virtually every person achieving the American Dream of home ownership has qualified for a mortgage. S/he has executed that mortgage as an accessory contract of security under La. C.C. §1913, paraphed *Ne Varietur* with the principal contract, a Promissory Note. The Note at bar, regardless of the nature of the accessory contract of LWOTP, is not materially different.

No doubt the Honorable and experienced jurists composing the instant Panel have heard some real doozies in defense of a foreclosure proceeding on such a Note. It is fair to say valid, triable defenses to a Promissory Note, assuming such Note is presented properly in authentic form, are rare as hen's teeth, limited to uncommon vices of consent such as fraud, duress and error under La. C.C. § 1948. Yet one feels complete confidence in the judicial system, in that each member of this Court has always complied, open-minded, with the key phrase "has heard".[40]

---

[38] *Becker & Associates, Inc. v. Lou-Ark Equipment Rentals Co., Inc.*, 331 So. 2d 474 (La. 1976)
[39] *Accord:* Right of first refusal—[*Distinguishing*] Time limitation for grant of right of first refusal, 1 La. Prac. Real Est. § 9:28 (2d ed.):

[40] As befits Canon 2 "impartiality" in the Code of Judicial Conduct.

E-FILED: 8/10/2022 9:45:53 PM

The judge below at least deserves creativity points for breaking unexplored ground in judicial activism, articulating a breathtaking expansion of heretofore narrow and limited defenses to a Promissory Note. The trial court's technique was thorough, designed not only to disappear the Promissory Note and any evidence thereon, but also to insulate it from review. The judge below, upon information and belief, is sitting less than two years from investiture, meaning that this Court is called upon for unequivocal reversal, with a healthy dollop of supervisory guidance.

Having been denied all attempts to proffer it or evidence on it, counsel for Mr. Ngo filed a Proffer List, with the Note as Item #1.[41] Granting Plaintiff's promptly filed *motion to strike, for award of attorney's fees, etc.* for "tainting the Record,", the court below further insulated this Note. That plus a high seven figure damage award, rendering a suspensive appeal bond non-pragmatic.

The Note is properly here now due to a rare paralegal. It takes a special kind of perseverance to find a pleading[42] whose sheer existence was adamantly denied below, as that which the trial judge assured did not exist, big as life in clear daylight.

### F. CONCLUSION AND PRAYER FOR RELIEF

The trial court erred as a matter of law and contractual construction. The cross-motions on directed verdict must be reversed, effectively terminating the litigation below. Ancillary relief in the premises is requested, including vacating the award of attorney's fees on the Proffer List, all costs of these proceedings, and transcripts which the Panel may wish to call up.

Respectfully submitted,

_____

[41] Exhibit F, Post-trial Order below striking, *inter alia,* "Proffer List", with Promissory Note prominently featured thereon as Item #1.
[42] Exhibit B: *The pleading that did not exist.*

28

## VERIFICATION AFFIDAVIT AND CERTIFICATE OF SERVICE

E-FILED: 8/10/2022 9:48:53 PM

STATE OF LOUISIANA
PARISH OF ORLEANS

BEFORE ME, the undersigned authority, appeared Justin Asher Zitler, to me personally known, who after being duly sworn did depose and say:

1. That he is the appellant attorney for Mr. Tommy Ngo.

2. That he reviewed the forgoing Application for Supervisory Writ and attachment thereto, and that the allegations contained therein are true and correct to the best of his knowledge and belief.

3. That he shall forthwith deliver or cause to be delivered a copy of the foregoing Application for Supervisory Writ Challenging Trial Court Judgment on Cross-Motions to opposing counsel and the trial court to wit:

**Attorney's for Carrollton & Oak, LLC**
**Michael G. Bagneris, Bar #02658**
935 Gravier Street, Suite 2110
New Orleans, Louisiana 70112
Phone: 504-493-7990
Email: bagneris@bpajustice.com

**Eric O. Person, Bar #10530**
1539 Jackson Avenue, Suite 100
New Orleans, Louisiana 70130
Phone: 504-561-8612
Email: eric@eoplaw.net

**Presiding Judge Jennifer M. Medley**
**Orleans Civil District Court, Division "F"**
421 Loyola Avenue, Suite 405
New Orleans, Louisiana 70112
Phone: 504-407-0250
Email via Division "F" Law Clerk Chelsea V. Hale: chale@orleanscdc.com
Email Division "F" backup email address: DivisionFOrleans@yahoo.com

Justin Asher Zitler

SWORN TO AND SUBSCRIBED, before me this 10th day of August, 2022.

Katherine Z. Crouch Bar # 34910
Crouch Law, LLC
2372 St. Claude Ave, Suite 224
New Orleans, La 70117
Katherine.crouch@crouchlawnola.com
Tel: 504-982-6995; Fax 888-364-5882

E-FILED: 8/10/2022 9:48:53 PM

# APPENDIX

E-FILED 8/10/2022 9:48:53 PM

**NO. 2021-C-0234**

**COURT OF APPEAL, FOURTH CIRCUIT**

**STATE OF LOUISIANA**



RECEIVED

AUG 10 2021

CLERKS OFFICE
CIVIL DISTRICT COURT

**CARROLLTON & OAK, LLC**

**VERSUS**

**NGA NGUYEN A/K/A KATHY NGUYEN D/B/A PHO BISTREAUX
RESTAURANT AND JOSEPH M. NGUYEN AND TIN NGUYEN**

IN RE:          TOMMY NGO

APPLYING FOR: SUPERVISORY WRIT

DIRECTED TO:   HONORABLE JENNIFER M MEDLEY
               CIVIL DISTRICT COURT, ORLEANS PARISH
               DIVISION "F-14", F  2017-00172 (CDC)

**WRIT GRANTED IN PART**

Relator, Tommy Ngo, seeks review of the district court's March 22, 2021

judgment, which denied relator's motion for summary judgment and granted, in

part, the motion for partial summary judgment in favor of respondent, Carrollton &

Oak, LLC. We grant the writ, in part, and reverse the portion of the district court's

judgment, insofar as it grants, in part, respondent's summary judgment motion.

In its partial grant of respondent's motion, the district court ruled that

respondent did not exercise its option to purchase the property in dispute and that

the five-year period to "complete the purchase of the property" had not

commenced. We find that respondent failed to meet its initial burden to show with

undisputed facts that it did not exercise the option to purchase. *See generally* La.

C.C.P. art. 966(D). As this Court stated:

> ... an option to buy or to sell ... is defined by La. C.C. art. 2620[] as
> "a contract whereby a party gives to another the right to accept an
> offer to sell, or to buy, a thing within a stipulated time." That article

1

E-FILED 8/10/2022 9:48:53 PM

further provides that the option "must set forth the thing and the price, and meet the formal requirements of the sale it contemplates." This Court has recognized that an option to buy must " 'be evidenced by a written instrument' but the unqualified acceptance thereof [must] be evidenced in writing, giving full recognition to and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer prior to the expiration date of the stipulated time." *Major Commodity Corp. v. Cunningham*, 555 So.2d 525, 527-28 (La. App. 4 Cir.1989) (citations omitted).

*Keyes v. Brown*, 14-0821, p. 10 (La. App. 4 Cir. 1/28/15), 158 So.3d 927, 933.

Courts have determined that resolving whether an option was exercised – through compliance with form and time requirements specified in the option contract – involves a finding of fact. *Casey v. Nat'l Info. Servs., Inc.*, 04-0207, p. 12 (La. App. 1 Cir. 6/10/05), 906 So.2d 710, 719 (citing *Enterprise Property Grocery, Inc. v. Selma, Inc.*, 38,747, p. 4 (La. App. 2 Cir. 9/22/04), 882 So.2d 652, 655; *Baldwin v. Bass*, 28,984, p. 7 (La. App. 2 Cir. 12/11/96), 685 So.2d 436, 439).

In support of respondent's motion, no deposition testimony was introduced, and the hearing transcript reveals that no discovery had taken place. Respondent produced an affidavit by its member, Nidal Jaber, which details his claims of relator's self-help. Otherwise, the affidavit contains a lone attestation that respondent "has not exercised the Lease with Option to purchase to date..." This is a conclusory statement that cannot support summary judgment. It is well-settled that ultimate or conclusory facts and conclusions of law contained in a supporting affidavit cannot be considered in a motion for summary judgment. *Indulge Island Grill, L.L.C. v. Island Grill, L.L.C.*, 16-1133, p. 11 (La. App. 4 Cir. 5/10/17), 220 So.3d 154, 162 (citations omitted).

The affidavit does not set forth any facts supporting that respondent did not exercise the option to purchase. The Lease with Option to Purchase sets forth a specific procedure for providing written notice to relator of respondent's intention to exercise the option, executing an agreement to purchase, payment under a promissory note, and holding a closing within specified deadlines. Nevertheless,

2

E-FILED: 8/10/2022 9:48:53 PM

Jaber did not attest to personal knowledge whether notice of intention to exercise the option was sent by certified or registered mail, any purchase agreement was executed, or closing took place on the sale, as contemplated in the Lease with Option to Purchase. Without specific supporting facts, the mere conclusory statement within Jaber's affidavit is insufficient to meet respondent's summary judgment burden, and summary judgment rules preclude making factual inferences in the mover's favor. *See Hines v. Garrett*, 04-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765) (observing that courts view "the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant"). The district court erred in granting respondent's summary judgment motion, in part, and we reverse this portion of the judgment.

For these reasons, the writ is granted in part. In all other respects, the writ is denied.

New Orleans, Louisiana this 10th day of August, 2021.

*JCL*

_____
JUDGE JOY COSSICH LOBRANO

**LOVE, J., CONCURS WITH REASONS**

_____
JUDGE TERRI F. LOVE

*PAB*

_____
JUDGE PAULA A. BROWN

3

E-FILED: 8/10/2022 9:48:53 PM

| | | |
|---|---|---|
| **CARROLLTON & OAK, LLC** | * | **NO. 2021-C-0234** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **NGA NGUYEN A/K/A KATHY** | * | **FOURTH CIRCUIT** |
| **NGUYEN D/B/A PHO** | | |
| **BISTREAUX RESTAURANT** | * | **STATE OF LOUISIANA** |
| **AND JOSEPH M. NGUYEN** | | |
| **AND TIN NGUYEN** | * | |
| | * | |

\* \* \* \* \* \* \*

*TFL*

**LOVE, J., CONCURS WITH REASONS**

     I concur in the reversal of the trial court's granting of Respondent's Motion for Partial Summary Judgment. I find that the issue of whether the option to purchase was exercised requires a factual determination to be made during trial, in that any supporting documents in this matter would require credibility determinations. *See Williams v. Asbestos Defendants*, 11-0716, pp. 7-8 (La. App. 4 Cir. 5/16/12), 95 So. 3d 497, 503; *See* La. C.C.P. art. 966(A)(3).



FILED

E-FILED: 8/10/2022 9:46:53 PM

2022 APR -5 AM 9: 04

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

CIVIL
DISTRICT COURT

**STATE OF LOUISIANA**

NO: 2017-972                                                    DIVISION: "F"

**CARROLLTON & OAK, LLC**

**VERSUS**

**NGA NGUYEN, ET AL**

FILED:_____                    _____
                                                            **DEPUTY CLERK**


<u>**MOTION FOR INVOLUNTARY DISMISSAL ON DIRECTED VERDICT**</u>


　　　　**NOW INTO COURT,** through undersigned counsel, comes third-party defendant Tommy Ngo, who respectfully moves the court to grant involuntary dismissal on directed verdict in his favor on the issues of termination of Lease and automatic termination of the Option to Purchase at midnight on April 24, 2019.


**UNDISPUTED BACKGROUND**

　　　　The contract at issue is the instrument styled "Lease with Option to Purchase", executed April 24, 2014, by and between property-owner Tommy Ngo and Lessee/Optioner Carrollton & Oak LLC. Carrollton & Oak LLC (hereafter "C&O") is a Louisiana Limited Liability Company composed of two members, Nidal Jaber and Gerard McGovern.[1] There is not now, nor has there ever been, an operating agreement between the two members.[2] The absence of Mr. McGovern from these proceedings is to be addressed as an independent ground of dismissal under LCCP § 927(A) 4, 6. The object of the contract concerns immovable property located at 1200 S. Carrollton Ave., New Orleans, La. (at the corner of Carrollton and Oak Street).

**A. INVOLUNTARY DISMISSAL ON DIRECTED VERDICT**

　　　　Under LCCP §1672(B), involuntary dismissal of an action tried to the bench is proper, "after the plaintiff (Jaber) has completed the presentation of his evidence..., on the ground that

---

[1] Jaber trial Exhibit # 13.
[2] Jaber deposition, P. , La. R.S. 12:1311



E-FILED 11/12/22 18:59 PM upon the facts and the law, the plaintiff has shown no right to relief." Under LCCP §1810, "A

motion for directed verdict shall state the specific grounds therefor."

### A.1. NATURE OF THE LEASE PORTION OF THE CONTRACT

"This lease agreement ("Lease"), is effective 24 April, 2014 ...by and between Tommy

Ngo ("Landlord") and Carrollton & Oak LLC ("Tenant"), herein represented by its duly

authorized *representatives*.[3]" Landlord leases to "Tenant" the "entirety of the property" at 1200

S. Carrollton Ave, as is more fully described in Exhibit A legal description. The rent to Landlord

by "Tenant" is $6384.27 per month

"and other considerations contained in this agreement promptly when due without any
deduction, setoff, or abatement except as may be specifically set forth in the lease agreement."
**ARTICLES I, II, III.**

There is no Lease requirement that the "Tenant" reside in, occupy, or otherwise inhabit

any of the units itself, but rather may "sublease any portion of the leased premises"... "in its sole

and absolute discretion." (**ARTICLE VIII**). "Tenant" pays or reimburses Landlord promptly for

all utilities (**ARTICLE VI**), insurance (**ARTICLE XI, XII**), and taxes (**ARTICLE XIV**).

Commonly known as a "triple-net lease", it recites the duties and responsibilities of the

"Tenant", in addition to the payment of utilities, taxes and insurance noted above. **ARTICLE**

**VII, Section 2.c.** requires the Landlord

"to fully cooperate with Tenant in notifying all current tenants of the Leased Premises
that Tenant has full possession of the property and that all rents currently paid to Landlord
pursuant to all tenant leases is heretofore [sic] to be paid to Tenant." (**ARTICLE VII**).

Besides collecting the rents of tenants, Tenant "shall be responsible for all maintenance

and repair to the Leased Premises" (**ARTICLE IX**), and "shall proceed to repair...and restore

the Leased Premises" in case of "fire, windstorm or other casualty" (**ARTICLE XIII, Sec. 1**).

As to the Lease portion of the contract at issue, it is hard to dispute that the lion's share of

Articles in the contract clearly express the relationship of Landlord and Tenant of the entire

property on a triple-net lease.

**Art. 2045. Determination of the intent of the parties**
Interpretation of a contract is the determination of the common intent of the parties.
Arts 1984, No. 331, §1, eff. Jan. 1, 1985.

**Art. 2046. No further interpretation when intent is clear**

---

[3] N/B. the plural "*representatives*". See Sections B and C, *infra*.

2

E-FILED: 8/10/2022 4:59 PM

When the words of a contact are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
Acts. 1984, No. 331, §1, eff. Jan. 1, 1985.

### A.2. THE OPTION TO PURCHASE PROVISION

In the Option to Purchase provision,

"Landlord grants to Tenant the exclusive right, privilege and option to buy and purchase...the Leased Premises in its 'as-is' condition, for the price and upon the terms hereinafter set forth: (ARTICLE XVIII, Section 25).

"...the purchase price shall be $1,750,000.00 (the "Purchase Price"); and the Option Fee shall be credited to the Purchase Price. The balance of the Purchase Price is being paid as follows:

1) By Tenant's Promissory Note payable to the order of Landlord...in the amount of $703,727.49 (the "Note"), *with the due date of said Note being five years from the date of its execution;*
2) Interest on the unpaid principal balance of the Note at 3% per annum;
3) The $300,000 cash payment for option fee credited to the Purchase Price;
4) The payoff amount to Gulf Coast Bank & Trust
   **[Emphasis Supplied]**

It is undisputed that C&O failed to pay the promissory Note on or before its due date, April 24, 2019; nor does Jabar claim to, nor has Jabar made any attempt to pay the Note at any time thereafter.[4]

"...further, this option is valid for only so long as the Lease is effective and shall automatically terminate if this lease is ever terminated or cancelled for any reason whatsoever...(ARTICLE XVIII, Section 25, Subsection f).

The option to purchase automatically terminates if the Lease is terminated "for any reason whatsoever."

### Art. 2050. Provisions interpreted in light of each other

Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.
Acts 1984, No. 331, §1, eff. Jan. 1, 1985.

The above provision under **ARTICLE XVIII, Section 25, Subsection f)** must be read *in pari materia* with the Events of Default under the Lease (ARTICLE XVI b.):

The following events are deemed events of default by Tenant under this Lease:
(b.) Tenant fails to pay the Promissory Note executed this same date [April 24, 2014] payable to Landlord, *in accordance with its terms.* **[Emphasis Supplied]** (ARTICLE XVI b.)

On its face, the Note carries a five-year term to maturity, which makes sense. If Tenant is not strong enough financially to complete the Purchase by exercising its purchase option within five years from the date of execution of the contract, much less skip five months' rent, then

---

[4] By contrast, Gerard McGovern (the other member of Carrollton & Oak LLC) at least took the first step in the procedure for exercising the option to purchase, providing notice to Landlord under ART. XVIII, Sec. 25(a), on April 24, 2019.

E-FILED 8/10/2022 3:45:53 PM

Landlord would be foolish to grant Tenant an extension of time (beyond five years) in which to exercise its exclusive Purchase Option.

Interpreting these provisions in light of each other yields the ineluctable result that the Lease is defaulted and the option to Purchase automatically terminated, at midnight on April 24, 2019. Automatic termination of the purchase option by event of default on the Lease under **ARTICLE XVI, Section (b)** for failure to pay the NOTE when due, five years from execution, triggers *both* termination of Purchase Option *and* default on Lease.

## B. AN ALTERNATIVE CONTRACTUAL PATH LEADS TO THE SAME RESULT

An alternative contractual path to "automatic termination" of the option to purchase under **Section 25(f)** is shown by a well-drafted symmetry between events of default under **ARTICLE XVI, subsections a) and b)**. We now turn to **ARTICLE XVI, subsection (a)**:

"Tenant fails to pay...any installment of the rent reserved in this Lease when due...or any other payment or reimbursement to Landlord required in this Lease when due, and that failure continues for a period of sixty (60) days after notice to Tenant..." **ARTICLE XVI, subsection (a).**

Reading the above clause *in pari materia* with the final clause of **ARTICLE XVIII, Section 25, subsection (f)**:

"If Landlord notifies Tenant of a default under the Lease as provided in the Default or Abandonment section above, Tenant shall have the right to exercise this Option *during the sixty (60) day time period provided to Tenant to remedy said default*." [*Emphasis supplied*]

Here, it is undisputed that Landlord provided Tenant with a default notice dated February 13, 2019, for five months of unpaid rent and associated bank charges under the Lease. Further, no party disputes that C&O cured said default *on the Lease* by certified check on April 9, 2019, in the amount of $45,083, within the sixty (60) day cure period.

However, Tenant failed to "exercise the Purchase Option during the sixty (60) day period provided to Tenant to remedy said default." Exercise of the Option entails, in part, payment of the Note under Section 25 c), which no one contends happened. Thus, interpretation leads back to **ARTICLE XVI b)**, yielding the same result.

Under **ARTICLE XVII**, the Remedy section of the Lease,

"On the happening of any event of default in **ARTICLE XVI** above and not remedied...Landlord thereafter has the full; right, at its option: (1) to cancel this lease effective immediately...and retain the Deposit; or (4)...to reenter the Leased Premises and relet them for

the price and terms as may be available without notice or other proceedings. **Tenant by this agreement assenting to this right and expressly waiving the necessity of any notice to vacate.**" [Emphasis supplied] ARTICLE XVII

**CONCLUSION**

       Under the clear and explicit wording of the instrument at bar, there are no disputed issues of material fact to preclude directed verdict in favor of Landlord of termination of the Tenant's Purchase Option and termination of the Tenant's right to possession of the Leased Premises, as of midnight on April 24, 2019, five years from the date of execution of the instrument and its accompanying Note.

       As a matter of law and interpretation of contracts, the case at bar is deceptively simple. The instant motion should be granted forthwith, with all property damages claimed by Tenant assessed against Tenant.

Respectfully submitted,

_____
CONNIE P. TRIEU (Bar No. 30312)
TRIEU LAW, LLC
1800 Carol Sue., Suite 7
Gretna, LA 70056
Telephone: (504) 301 – 4525
Facsimile: (504) 301 – 4683
*Attorney for Tommy Ngo*

**Civil District Court for the Parish of Orleans**
**STATE OF LOUISIANA**

No. 2017 -00972
2019 - 03281

Division/Section: F-14

CARROLLTON & OAK, LLC ET AL
versus
NGUYEN, NGA A/K/A NGUYEN, KATHY D/B/A PHO BISTREAUX RESTAURANT   ET AL

Date Case Filed: 1/31/2017

NOTICE OF SIGNING OF JUDGMENT

TO:

Michael G Bagneris Esq      02658
935 Gravier Street
1702
New Orleans, LA 70112

Eric O Person Esq      10530
1539 Jackson Avenue, Suite 100
New Orleans, LA 70130

Connie P Trieu Esq      30312
1800 Carol Sue Ave
Suite 7
Gretna, LA 70056

Allison J Johnson Esq      36207
1800 Carol Sue Ave.
Suite 7
Gretna, LA 70056

Zachary T Lamachio Esq      39432
1800 Carol Sue Ave Ste 7
Gretna, LA 70056

In accordance with Article 1913 C.C.P., you are hereby notified that Judgment
in the above entitled and numbered cause was signed on May 13, 2022

New Orleans, Louisiana
May 26, 2022

Chelsea V Hale, Esq.
Law Clerk, Division "F"

Civil District Court
Parish of Orleans, State of La.

E-FILED: 8/10/2022 9:48:53 PM

# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
## STATE OF LOUISIANA

NO.  2017-00972               DIV. "F"               SECTION "14"

## CARROLTON & OAK, LLC
### V.
### NGUYEN, NGA A/K/A NGUYEN, KATHY
### D/B/A PHO BISTREAUX RESTURANT ET AL

FILED: _____        _____
                                                        **DEPUTY CLERK**

## JUDGMENT

This matter came for a bench trial on March 30, March 31, April 1, April 5, April 11, and April 12, 2022.

| | | |
|---|---|---|
| **PRESENT:** | Michael G. Bagneris<br>Eric O. Person | Attorneys for Plaintiff,<br>Carrollton & Oak, LLC |
| | Rene Sabathier | Attorney for Defendants<br>Nga Nguyen, a/k/a Kathy Nguyen d/b/a<br>Pho Bistreaux Restaurant, Joseph M. Nguyen<br>and Tin Nguyen ("Pho Bistreaux") |
| | Allison Johnson<br>Connie P. Trieu<br>Zachary T. LaMachio | Attorneys for Defendant<br>Tommy Ngo |

After hearing the testimony at trial, hearing the arguments of counsel, reviewing the evidence, and for the reasons assigned, the Court renders judgment as follows:

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the *Motion for Involuntary Dismissal on Directed Verdict,* filed on behalf of Defendant, Tommy Ngo on April 5, 2022, is hereby **DENIED.**

**IT IS ORDERED, ADJUDGED AND DECREED** that the *Re-Urged Motion for Directed Verdict,* or *Motion for Involuntary Dismissal,* made on oral motion on behalf of Plaintiff, Carrollton & Oak, LLC, on April 5, 2022, is hereby **GRANTED.**[1] This Court finds that Plaintiff, Carrollton & Oak, LLC, did not exercise the Option to Purchase real property subject to said Lease with Option to Purchase and titled to Defendant, Tommy Ngo bearing municipal number 1200 South Carrollton Avenue, New Orleans, Louisiana.

*[SIGNATURE BLOCK ON FOLLOWING PAGE.]*

---

[1] This Court acknowledges the common-practice of attorneys to inter-changeably reference a motion for involuntary dismissal to that of a motion for directed verdict. Plaintiffs' counsel interchangeably used and reference both an involuntary dismissal and directed verdict during oral arguments at trial, as Defendant also did in his written motion and oral argument.

**JUDGMENT READ, RENDERED, AND SIGNED** in New Orleans, Louisiana, this

E-FILED 9/26/2022 9:48:53 PM

**23** day of May, 2022.

_____

JUDGE JENNIFER M. MEDLEY, DIVISION F

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

E-FILED  8/10/2022 9:48:53 PM

STATE OF LOUISIANA

NO.    2017-00972                DIV. "F"                SECTION "14"

CARROLTON & OAK, LLC

V.

NGUYEN, NGA A/K/A NGUYEN, KATHY

D/B/A PHO BISTREAUX RESTURANT ET AL

FILED: _____           _____
                                          **DEPUTY CLERK**
                    <u>REASONS FOR JUDGMENT</u>

     A brief history is important as this has been a long and contested action by all parties. This matter came for a bench trial on March 30, March 31, April 1, April 5, April 11, and April 12, 2022 to resolve the remaining two issues returned by the Fourth Circuit on August 10, 2021. Those issues were 1) Whether the option to purchase the property at 1200 S. Carrollton Ave had been exercised and 2) How much in damages is owed by each party. This court heard trial testimony in that order.

     On April 5, 2022, Defendant, Tommy Ngo, filed a *Motion for Involuntary Dismissal on Directed Verdict*. On April 11, 2022, at the close of its case-in-chief, Plaintiff, Carrollton & Oak, LLC orally moved to *Re-Urge* its *Motion for Directed Verdict*, in which this Court had previously taken under advisement. On April 11, 2022, this Court granted the *Motion* finding that the option to purchase had not been exercised by Plaintiff, leaving testimony as to damages suffered by each party left for adjudication. The Court then denied the Defendant's *Motion* that was filed on April 5, 2022. After rendering its verdicts on the record, the Court asked for testimony and argument related to the issue of damages to proceed to trial. Counsel for Defendant asked for a stay to appeal the court's denial, which this court denied. The issues above were bifurcated by the parties prior to the trial, therefore any testimony could continue as to damages while appealing the first issue. However, Counsel for Defendant, Tommy Ngo, chose not to go forward on damages and waived his right to those damages related to trial on the merits in this proceeding. Defendant Tommy Ngo submitted the case for consideration on the evidence already submitted on the record.

     As the Fourth Circuit Court of Appeal stated in its Decree relevant to the present case at hand issued on August 10, 2021, in Major Commodity Corp. v. Cunningham,

> ... an option to buy or to sell ... is defined by La. C.C. art. 2620[]
> as "a contract whereby one party gives to another the right to accept
> an offer to sell, or to buy, a thing within a stipulated time." That
> article further provides that the option "must set forth the thing and
> the price, and meet the formal requirements of the sale it

E-FILED 8/10/2022 9:48:58 AM

contemplates." This Court has recognized that an option to buy must "be evidenced by a written instrument' but the unqualified acceptance thereof [must] be evidenced in writing, giving full recognition to and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer prior to the expiration date of the stipulated time."[2]

*Keyes v. Brown*, 14-0821, p. 10 (La.App. 4 Cir. 1/28/15), 158 So.3d 927, 933.

Additionally, in the "LEASE WITH OPTION TO PURCHASE" executed by and between Plaintiff, Carrollton & Oak, LLC (Tenant) and Defendant, Tommy Ngo (Landlord) on April 24, 2014, "ARTICLE XVIII MISCELLANEOUS PROVISIONS. Section 25. Option to Purchase." Provides,

> For and in consideration of the payment of $300,000 (the "Option Fee") by Tenant to Landlord upon the execution of this Lease with Option to Purchase, the receipt and sufficiency of which is hereby acknowledged, at any time during the term of this Lease, Landlord grants to tenant the exclusive right, privilege and option to buy and purchase... for the price and upon the terms hereinafter set forth, the Leased Premises:
>
> a) In the event Tenant exercises his option herein granted, Tenant will notify Landlord in writing of the exercise of said option by delivering such written notice to Landlord as provided in the Notice section above;
>
> b) This agreement is NOT an Agreement to Purchase, in the event that Tenant notifies Landlord of Tenant's intention to exercise said option to purchase then, in that event, the parties agree to execute an Agreement to Purchase to include the terms and conditions listed in this Section;
>
> c) If this Option is exercised by Tenant (the "Tenant's Purchase") the purchase price shall be $1,750,000 (the "Purchase Price"); and, the Option Fee shall be credited to the Purchase Price...

The trial testimony of Plaintiff, a 100% owner, Nidal Jaber, and the Defendant, Tommy Ngo, along with the Lease with Option to Purchase, confirmed and proved that Plaintiff, Carrollton & Oak, LLC did not provide written notice to Defendant evidencing Plaintiff's intention to exercise the option to purchase, the parties never executed a subsequent agreement to purchase, and hold a closing according to the agreement. Plaintiff, Carrollton & Oak provided specific supporting facts demonstrating the only monetary incentives imposed on Plaintiff in favor of Defendant was the $312,500.00 to purchase the Option to Purchase provision contained in the Lease Agreement executed by and between the parties.

This Court acknowledges the common-practice of attorneys to inter-changeably reference a motion for involuntary dismissal to that of a motion for directed verdict. Plaintiffs' counsel interchangeably used and reference both an involuntary dismissal and directed verdict during oral arguments at trial, as Defendant also did in his written motion and oral argument. As such, this

---

[2] See *Major Commodity Corp. v. Cunningham*, 555 So.2d 525, 527-28 (La.App. 4 Cir. 1989) (Citations omitted.).

Court will only address the law on an involuntary dismissal, as that is the proper procedure for a

E-FILED: 8/10/2022 9:48:53 PM

trial wherein the Judge is the trier-of-fact.  Louisiana Code of Civil Procedure Article 1672(B)

governs motions for involuntary dismissal and provides,

> In an action tried by the court without a jury, after the plaintiff has
> completed the presentation of his evidence, any party, without
> waiving his right to offer evidence in the event the motion is not
> granted, may move for a dismissal of the action as to him on the
> ground that upon the facts and law, the plaintiff has shown no right
> to relief. The court may then determine the facts and render
> judgment against the plaintiff and in favor of the moving party or
> may decline to render any judgment until the close of all the
> evidence.

To decide a motion for voluntary dismissal under Louisiana Code of Civil Procedure Article

1672(B), the trial court should weigh and evaluate all the evidence presented by the plaintiff and

then determine from that evaluation whether the plaintiff established a *prima facie* case.[3]

This Court finds after a six day trial, testimonial evidence, and the presentation of

Plaintiffs' case-in-chief, Plaintiff established a prima facie case. "[t]he record and all reasonable

inferences that may be drawn from it in the light most favorable to the [Defendant]," supports the

finding that Plaintiff did not exercise the Option to Purchase.[4] Therefore, Plaintiffs oral *Motion for*

*Directed Verdict* is granted wherein this Court concluded Plaintiff did not exercise this Option in

accordance with the terms of the Lease with Option to Purchase.

On direct examination of Plaintiff's 100% owner, Nidal Jaber, Plaintiff's Counsel offered,

filed, and introduced Exhibit P-27, "Documents Regarding Cure of Default." This Exhibit included

a *Receipt* whereby Defendant, Tommy Ngo signed, on April 9, 2019, and acknowledged that said

*Receipt* for $45,083.27 "cure[d] any and all claims of default, past and present, against Carrollton

& Oak, LLC." Defendant, Tommy Ngo also identified the Receipt and his signature on this Exhibit

during his direct examination testimony by Plaintiff's Counsel. On cross-examination of Mr. Jaber,

Defense Counsel laid a foundation, asked questions, and had excerpts from Mr. Jabers' deposition

testimony read into the record. However, Defense Counsels line of questions related to issues and

events that took place prior to April 30, 2019. At this time, Plaintiffs' Counsel objected to the line

of questioning on grounds of relevancy. As the *Receipt* cured any and all defaults Plaintiff incurred

as of April 30, 2019, Defense Counsel was prohibited from asking questions or making arguments

related to issues and events prior to April 30, 2019.

---

[3] See *Mayes v. State*, 685 So.2d 497 (La. Ct. App. 3d Cir. 1996); *Super Fresh/Sav-A-Center, Inc. v. Ashley-Bickham Baker*, 655 So.2d 531 (La. Ct. App. 1st Cir. 1995); *Morgan v. City of New Orleans*, 647 So.2d 1308 (La. Ct. App. 4th Cir. 1994).

[4] See *Hines v. Garrett*, 04-0806, p.1 (La. 6/25/04), 876 So.2d 764, 765).

In response to this Courts exclusion of this line of questioning, Defense Counsel moved to

E-FILED: 8/10/2022 9:48:53 PM

proffer evidence pursuant to Louisiana Code of Civil Procedure Article 1636. On the record,

Defense Counsel made a statement setting forth the nature of the evidentiary value of being able

to proffer the cross-examination of Mr. Jaber on issues prior to April 30, 2019. Following this

statement of record, this Court denied Defendants request to proffer evidence as the deposition

testimony of Mr. Jaber had already been admitted and accepted into evidence and Mr. Jaber had

already answered and read deposition testimony related to events prior to April 30, 2019. After

this Court's denial of proffer testimony, Defense Counsel objected to this Courts' ruling.

In *Gulf Outlet Marina, Inc. v. Spain*, the Fourth Circuit Court of Appeal reviewed a dispute

between a landlord and tenant, wherein the district court awarded the plaintiff-appellee past due

rent and expenses incurred for the preservation of a boat slip and all costs.[5] On Appeal, the Fourth

Circuit used *Anderson v. Casualty Reciprocal Exchange, 602 So.2d 282, 284 (La.App. 2 Cir.*

*1992),* for its analysis of a proffer by providing,

> La. C.C.P. art. 1636(A) provides: when the court rules against the
> admissibility of any evidence, it shall either permit the party offering
> such evidence to make a complete record thereof, **or permit the
> party to make a statement setting forth the nature of the
> evidence.** [Emphasis added.] ... [a]ccording to LSA-C.C.P. Art.
> 1636, "when a court rules against the admissibility of any evidence,
> it shall either permit the party offering such evidence to make a
> complete record thereof, or permit the party to make a statement
> setting for the nature of the evidence." ... LSA C.C.P. Art. 1636 is
> mandatory, not discretionary. *Hopkins v. Department of Highways,
> 350 So.2d 1271 (La.App. 3d Cir. 1977), on remand 364 so.2d 616,
> writ denied 365 So.2d 262; Liberty Mutual Ins. Co. v. Bryant, 191
> So.2d 747 (La.App. 2nd Cir. 1996), writ denied 250 La. 16, 193 So.2d
> 528.* However, the trial judge has the discretion to receive the proffer
> in full, or to require a statement setting forth the nature of the
> evidence. LSA-C.C.P. Art. 1636... *Id.* This court agrees with
> *Anderson* that the opportunity to proffer excluded evidence is
> mandatory under La. C.C.P. art. 1636, but the trial court has the
> discretion to receive the proffer in full, **or to require a statement
> setting forth the nature of the evidence.** *Martin v. Esponge, 388
> So.2d 128, 130 (La.App. 1 Cir. 1980),* is consistent with the
> Anderson court's conclusion that limiting the proffer to a statement
> of the nature of the excluded evidence rather than the reception of
> the evidence in full is sufficient under La. C.C.P. art. 636: **The
> appellant is not prejudiced by a trial judge's limiting his proffer
> to a statement setting forth the nature of the evidence rather
> than allowing him to make a complete record thereof,** since the
> appellate court will remand for completion of the record if, in the
> former case, the evidence excluded is ruled inadmissible. [Emphasis
> added.] Id. This Court agrees with both *Anderson* and *Martin*
> **that a statement setting forth the nature of the excluded
> evidence is sufficient and within the discretion of the trial court.**
> [Emphasis added.]

---

[5] See *Gulf Outlet Marina, Inc. v. Spain, 2002-1589 (La. App. 4 Cir. 6/25/03), 854 So. 2d 386, 387, writ denied, 2003-2075 (La. 11/7/03), 857 So. 2d 497.*

E-FILED: 8/10/... Louisiana Evidence Code Article 103(A)(2) provides,

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and when the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.

The legislative comments to Paragraph B of Article 103(A)(2) provides this Article generally follows Federal Rule of Evidence 103(a). However, this Article "continues the general requirements in Louisiana law that there be a contemporaneous objection." Despite Louisiana Evidence Code Article 103(A) not specifically refering to "proffers" or "offers of proof," Federal Evidence Code Article 103(a) does when it provides,

> A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

The intent of an objection to the admission or exclusion of evidence is preservation of error for appellate review, since Louisiana Evidence Code Article 103 provides error may not be predicated on a ruling admitting [or excluding] evidence unless a timely objection is made on the record. Additionally, to appeal from an erroneous trial court ruling excluding evidence, the reason for the objection must be brought to the attention of the court in such a manner as to allow the court to make a proper ruling and to prevent or cure any error. For a litigant to preserve the right to appeal an erroneous trial court ruling excluding evidence, the adverse party affected by the exclusion must make a timely objection.

As previously stated, Counsel for Defendant timely stated his objection for the record and a statement laying the evidentiary foundation for that objection to this Court's exclusion of questions related to issues and events prior to the cured default date of April 30, 2019. Counsel for Defendant incorrectly argued Defendant had the right to complete the record for appellate review. However, this Court—and the Fourth Circuit Court in *Anderson* and *Martin*—rejected this contention which is inconsistent with Louisiana Evidence Code Article 103, the Federal Rules of Evidence Article 103(A), and Louisiana Code of Civil Procedure Article 1636. This Court, like the Fourth Circuit held in *Gulf Outlet Marina, Inc. v. Spain*, limited the Defendants opportunity to proffer evidence through a concise statement setting forth the nature of said evidence *in addition to* Defense Counsel making a timely objection to the exclusion of this line of cross-examination questioning.

Following this Court partially granting Plaintiffs *Re-Urged Motion for Directed Verdict,*

E-FILED 8/10/2022 9:48:53 PM

Defendant moved to proffer the testimony of Plaintiffs' 100% owner, Nidal Jaber, Defendant, Tommy Ngo, fact-witness Rose Nguyen a.k.a Rose Nguyen Ngo, and fact-witness known as Lexi Ngo (Defendant Ngo's daughter). In essence, Defendant wanted to proffer his entire case-in-chief onto the record and re-cross-examine Mr. Jaber.

In *Gulf Outlet Marina, Inc. v. Spain,* the Fourth Circuit also concluded,

> … had the trial court allowed the proffer, this court would not have reversed the trial court's decision to exclude the evidence… the trial judge did not abuse his discretion in refusing to allow amendment of the pre-trial order, and in excluding the testimony at issue on the basis that the witnesses were not named in that order. Thus, even if the trial court had allowed the proffer, we would not have considered the testimony in this appeal. Therefore, the trial judge's refusal to allow the proffer, under the circumstances of this case, is harmless error.[6] [Emphasis added.]

The proffered testimony of Defendants case-in-chief was procedurally defective and unnecessary for this Court to make a ruling on Plaintiffs' *Re-Urged Motion for Directed Verdict.* During the course of Plaintiff's case-in-chief, evidence was presented to establish facts necessary to prove Plaintiff did not exercise the Option to Purchase the property at issue. Plaintiff introduced undisputed facts, namely: (1) Plaintiff (Tenant) did not notify Defendant (Landlord) in writing of him exercising the Option; (2) the parties did not execute a subsequent Agreement to Purchase to include specific terms and conditions of the purchase; and (3) Plaintiff did not provide Defendant with the purchase price of $1,750,000.00. Additionally, Plaintiffs laid the foundation for all exhibits offered, filed, and introduced into the record; introduced evidence that was relevant, authentic, not hearsay, and otherwise admissible under the code of evidence; and attested to or rebutted the credibility of each witness placed on the stand in favor of Plaintiffs' case-in-chief. The Plaintiffs' case-in-chief was so compelling before this Court that to allow Defendant to proffer his case-in-chief would have bared no weight in consequence or consideration in comparison to the evidence offered in favor of granting the *Re-urged Motion for Directed Verdict.*

After the conclusion of Plaintiff's direct examination of Defendant, Tommy Ngo and Plaintiff's 100% owner, Nidal Jaber, defense counsel had the right to and opportunity to cross-examine both witnesses. Louisiana Evidence Code 611(B) governs the scope of cross-examination. Louisiana Evidence Code 611(B) provides,

---

[6] See *Gulf Outlet Marina, Inc. v. Spain,* 2002-1589 (La. App. 4 Cir. 6/25/03), 854 So. 2d 386, 393, writ denied, 2003-2075 (La. 11/7/03), 857 So. 2d 497.

A witness may be crossed examined on any matter relevant to any
issue in the case, including credibility. However, in a civil case,
when a party or person identified with **a party has been called as a
witness by an adverse party to testify only as to particular
aspects of the case, the court shall limit the scope of cross-
examination to matters testified to on direct examination**, unless
the interests of justice otherwise require. [Emphasis added.]

E-FILED: 8/10/2022 9:48:55 AM

During both Plaintiff and Defendants cross-examination, Counsel for Defendant sought to expand

the pleadings, expand Plaintiffs' direct examination, and expand the issues reserved for trial.

Louisiana Code of Civil Procedure Article 1154 provides,

When issues not raised by the pleadings are tried by express or
implied consent of the parties, they shall be treated in all respects as
if they had been raised by the pleadings. Such amendment of the
pleadings as may be necessary to cause them to conform to the
evidence and to raise these issues may be made upon motion of any
party at any time, even after judgment; but failure to so amend does
not affect the result of the trial of these issues. If evidence is objected
to at the trial on the ground that it is not within the issues made by
the pleadings, the court may allow the pleadings to be amended and
shall do so freely when the presentation of the merits of the action
will be subserved thereby, and the objecting party fails to satisfy the
court that the admission if such evidence would prejudice him in
maintaining his action or defense of the merits...

Plaintiff and Defendant were both called as witnesses for direct examination by Plaintiffs'

Counsel. Defendant, as the adverse party, was only permitted to answer questions on cross-

examination that were raised, addressed, and testified to on direct examination. At no time during

this trial, did Plaintiff or Plaintiffs' Counsel express or imply consent to expand the issues not

previously raised in the pleadings. Specifically, Plaintiffs' Counsel objected to any and all

questions asked during cross-examination that were not raised on direct as being prejudicial to

Plaintiff who was not put on notice of these issues and allegations in such a manner as to adequately

and fairly prepare for trial. Additionally, this Court fails to acknowledge or find that the

presentation of the merits of the issued reserved for trial warranted or would be subserved by an

expansion of the pleadings during the course of trial.

Defendants *Motion for Involuntary Dismissal on Directed Verdict* was denied as this Court

declined to find that, upon the facts and law presented, Plaintiff has shown no right to relief.

Likewise, Defendants Motion was denied as the evidence, taken as a whole, indicated Plaintiff

established his case by a preponderance of the evidence, meaning Plaintiff's evidence rendered the

existence of the fact or cause sought to be proved more probable than not.[7] The allegations and

arguments presented in Defendants *Motion* expanded the nature of the Pleadings and the issued

---

[7] See *Hawthorn v. L'Hoste*, 664 So.2d 1335 (La. Ct. App. 4th Cir. 1995).

reserved for trial on the merits. Subsequent to this Court granting the Plaintiffs *Motion*, Defendant

E-FILED: 8/10/2022 9:48:53 PM

attempted to proffer his entire case in chief. Generally, a defendant who asserts a motion for involuntary dismissal does not waive the right to present evidence should the motion be denied. Although Defendant did not waive his right to present evidence after the denial of his *Motion*, Defendants case-in-chief was declared moot when Plaintiffs' *Motion for Directed Verdict* was granted by this Court on April 11, 2022. Upon the granting of Plaintiffs' *Motion*, Defendants counsel stated their objection for the record, on more than one instance, thus preserving Defendants right to appellate review.

Finally, this Court is inclined to note Counsel for Defendant was afforded Defendants right to proffer evidence during the duration of trial on April 1 and April 5, 2022. Pursuant to the Louisiana Code of Civil Procedure and case law, Counsel for Defendant was not prejudiced by this Court limiting said proffers to a statement setting forth the nature of the evidence, rather than allowing Defendant to make a complete record thereof, *and* admit deposition evidence, *and* expand cross-examination, *and* expand the pleadings without consent or prior notice, *and* present his entire case-in-chief, via proffer, after granting Plaintiffs' *Motion*. Pursuant to Louisiana Code of Civil Procedure Ann. Article 1673, the effect of a judgment of involuntary dismissal is the same as a "final judgment of absolute dismissal after trial." For the reasons aforementioned, this Court denied Defendants *Motion for Involuntary Dismissal on Directed Verdict* and further granted Plaintiff's *Re-Urged Motion for Directed Verdict.*

SIGNED in New Orleans, Louisiana, this 23rd day of May, 2022.

JUDGE JENNIFER M. MEDLEY, DIVISION F

CIVIL DISTRCIT COURT FOR THE PARISH OF ORLEANS

E-FILED 8/10/2022

FILED

STATE OF LOUISIANA

CASE NO. 2017-0972                                    DIVISION "F"

## CARROLLTON & OAK, LLC

### VERSUS

### NGUYEN, NGA A/K/A NGUYEN, KATHY D/B/A PHO BISTREAUX RESTAURANT ET AL.

FILED: _____          _____
                                                    DEPUTY CLERK

_____

### NOTICE OF INTENT TO APPLY FOR SUPERVISORY WRIT

NOW INTO COURT, through undersigned counsel, comes Tommy Ngo, pursuant to LCCP § 2201 and URLCA 4-2, who respectfully gives notice of his intention to apply for supervisory writs to the Fourth Circuit Court of Appeals for the State of Louisiana, from a La. C.C.P. §1915(A)(5) final judgment on directed verdicts as to the issue of liability, rendered May 23rd, 2022 by the Honorable Jennifer M. Medley, with notice of mailing dated May 26, 2022.

The Court is respectfully requested to set a return date not to exceed thirty (30) days of notice of mailing pursuant to URLCA 4-3, or in the instant request ~~upon~~ June 27, 2022. By separate motion filed contemporaneously herewith, counsel makes proper showing of its first motion for extension of time, a twenty (20) day extension of return date, from June 27, 2022, to July 18, 2022.

_Jennifer M. Medley_

Judge Jennifer M. Medley
Judge, Orleans Parish Civil District Court Section "F"

Respectfully submitted,

☑ CONNIE P. TRIEU (Bar No. 30312)

☐ LEEP. SHARROCK (Bar No. 38891)
☐ VELEKA ESKINDE (Bar No. 28305)
☐ CLINT HANCHEY (Bar No. 28925)
☐ MELVIN BURMASTER (Bar No. 19508)
1800 Carol Sue Ave., Ste. 7
Gretna, LA 70056
Tel: (504) 301-4525
Fax: (504) 301-4883
ct@trieulawfirm.com
*Attorney for Tommy Ngo*

Sgd. Jennifer M. Medley
Judge, Division "F"
A TRUE COPY

Civil District Court
Parish Of Orleans, State Of La.

E-FILED: 8/10/2022 9:48:53 PM

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 27th day of June, 2022, served a true, accurate and correct copy of Notice of Intent to Take Supervisory Writ on counsel for all parties to this proceeding, by mailing same by United States mail, properly addressed, and first class postage prepaid, by facsimile transmission, or by electronically mailing the foregoing document.

_____
CONNIE P. TRIEU

2

**CIVIL DISTRCIT COURT FOR THE PARISH OF ORLEANS**

E-FILED: 8/10/2022 9:48:53 PM

**STATE OF LOUISIANA**

**CASE NO. 2017-0972**                                      **DIVISION "F"**

**CARROLLTON & OAK, LLC**

**VERSUS**

**NGUYEN, NGA A/K/A NGUYEN, KATHY D/B/A PHO BISTREAUX**

**RESTAURANT ET AL.**

**FILED:** _____          _____

                                    **DEPUTY CLERK**

_____

**MOTION FOR EXTENSION OF RETURN DAY ON WRIT**

NOW INTO COURT, through undersigned counsel, comes Tommy Ngo, pursuant to

LCCP § 2201 and URLCA 4-3, who respectfully avers he does not yet have a certified transcript

of the first day of trial on March 30, 2022, and upon such averral respectfully requests an

extension of twenty (20) days in which to enlarge the return date set in Mr. Ngo's *Notice of*

*Intent to Take Supervisory Writ*, signed June 27, 2022 by the Hon. Jennifer M. Medley.

Respectfully submitted,

☑ CONNIE P. TRIEU (Bar No. 30312)

☐ LEE P. SHARROCK (Bar No. 38891)
☐ VELEKA ESKINDE (Bar No. 28305)
☐ CLINT HANCHEY (Bar No. 28925)
☐ MELVIN BURMASTER (Bar No. 19508)
1800 Carol Sue Ave., Ste. 7
Gretna, LA 70056
Tel: (504) 301-4525
Fax: (504) 301-4883
ct@trieulawfirm.com
*Attorney for Tommy Ngo*

1

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

E-FILED: 8/10/2022 9:48:53 PM

STATE OF LOUISIANA

NO.: 2017-00972                DIVISION "F"                SECTION-14

CARROLLTON & OAK, LLC

VERSUS

NGUYEN, NGA A/K/A NGUYEN, KATHY D/B/A

PHO BISTREAUX RESTAURANT ET AL

FILED:_____          _____
                                          **DEPUTY CLERK**

## ORDER

On June 27, 2022, a *Motion for Extension of Return Day on Writ*, was filed on behalf of Defendant Tommy Ngo. The Motion request an extension of a return day for twenty (20) days, or until July 18, 2022, due to an outstanding certified transcript request from the first day of trial on March 30, 2022. This Court is inclined to note Defendants *Motion* is not granted due to an outstanding transcript as a result of action and/or inaction of the Division "F" Certified Court Reporter. As of June 27, 2022, at 1:55 P.M., Counsel for Defendant has failed to confirm the request for the March 30, 2022 transcript and provide a deposit. *See attachment.* As such, the following is made an Order of this Court:

**IT IS ORDERED, ADJUDGED, AND DECREED** that this Court, hereby **GRANTS** the *Motion for Extension of Return Day on Writ*, filed on behalf of Defendant, Tommy Ngo on June 27, 2022.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the return date for Defendant, Tommy Ngo's supervisory writ be and hereby is **EXTENDED TWENTY (20) DAYS** or until **JULY 18, 2022.**

## NO FURTHER NOTICE WILL BE SENT

Signed at New Orleans, Louisiana, this 27th day of June , 2022

JENNIFER M. MEDLEY, JUDGE

**NOTICE PROVIDED TO ALL PARTIES IN ACCORDANCE WITH LA. C.C.P. ART. 1313 TO COUNSEL FOR PLAINTIFF, CARROLLTON & OAK, LLC AND DEFENDANT, TOMMY NGO.**

sgd. Jennifer M. Medley
Judge, Division "F"
A TRUE COPY

Civil District Court
Parish Of Orleans, State Of La.

# CIVIL DISTRCIT COURT FOR THE PARISH OF ORLEANS

FILED

E-FILED: 8/10/2022 9:48:53 PM

## STATE OF LOUISIANA

**CASE NO. 2017-0972**

DIVISION "F"

### CARROLLTON & OAK, LLC

### VERSUS

### NGUYEN, NGA A/K/A NGUYEN, KATHY D/B/A PHO BISTREAUX

### RESTAURANT ET AL.

FILED: _____

_____
DEPUTY CLERK

_____

## ORDER

IT IS ORDERED that the return ~~day on Mr. Ngo's~~ supervisory writ be and hereby is extended twenty (20) days, from June 27, 2022 to July 18, 2022.

**DENIED**

*Court Submitted Order.*

Thus done and signed in New Orleans, LA, this 27th day of June, 2022.

*Jennifer M. Medley*

Judge Jennifer M. Medley
Judge, Orleans Parish Civil District Court Section "F"

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 27th day of June, 2022, served a true, accurate and correct copy of Motion for Extension of Return Day on Writ on counsel for all parties to this proceeding, by mailing same by United States mail, properly addressed, and first class postage prepaid, by facsimile transmission, or by electronically mailing the foregoing document.

_____
**CONNIE P. TRIEU**

Sgd. Jennifer M. Medley
Judge, Division "F"
A TRUE COPY

*Herkeda T. Butler*
Civil District Court
Parish Of Orleans, State Of La.

2

| | | |
|---|---|---|
| **CARROLLTON & OAK, LLC** | * | **NO. 2022-CM-0494** |
| **VERSUS** | * | **COURT OF APPEAL** |
| **NGA NGUYEN, ET AL** | * | **FOURTH CIRCUIT** |
| (CIVIL DISTRICT COURT, ORLEANS PARISH# 2017-00972) Division "F-14" | * | **STATE OF LOUISIANA** |
| | * | |
| | * | |

E-FILED: 8/10/2022 9:48:53 PM

* * * * * * *

# ORDER

* * * * * * *

Considering the motion for extension of return date filed by Relator, Tommy Ngo,

**IT IS HEREBY ORDERED** that Relator's motion is granted. Relator's return date for the filing of his writ application is on or before July 29, 2022.

New Orleans, Louisiana this 19th day of July, 2022.

*DLD*

—————————————
JUDGE DANIEL L. DYSART

*RML*

—————————————
JUDGE ROSEMARY LEDET

*TGC*

—————————————
JUDGE TIFFANY GAUTIER CHASE

PLEASE SERVE:
Samantha Hutchinson, Court Reporter
Civil District Court, Division F, Rm. 405
421 Loyola Avenue

*cell
504-412-6001*

4886312

**CARROLLTON & OAK LLC**            *        **NO. 2022-C-0522**
E-FILED  8/10/2022 9:48:53 PM

**VERSUS**                          *        **COURT OF APPEAL**

**NGA NGUYEN, ET AL**               *        **FOURTH CIRCUIT**

(CIVIL DISTRICT COURT,              *        **STATE OF LOUISIANA**
ORLEANS PARISH# 2017-00972)
Division "F-14"                     *

                                    *
* * * * * * *

# O R D E R

* * * * * * *

In consideration that the above-captioned writ application fails to comply with Rule 4-5, Uniform Rules, Courts of Appeal, as it is missing several pages of the writ application itself, exhibits, and pleadings,

**IT IS HEREBY ORDERED** that within five (5) days of the date of this order, the relator supplement the writ application with the following:

1. The remaining pages of the writ application, including a complete table of contents;

2. The trial court's judgment and reasons for judgment;

3. All pleadings upon which the trial court's ruling was based, including any opposition, as well as any exhibits attached thereto;

4. Relator's signed notice of intent;

5. A signed order setting a return date; and

6. A verifying affidavit.

New Orleans, Louisiana this _5th_ day of August, 2022.

*TFL*

_____
CHIEF JUDGE TERRI F. LOVE

*JCL*

_____
JUDGE JOY COSSICH LOBRANO

*SCJ*

_____
JUDGE SANDRA CABRINA JENKINS

4887184

FILED

2020 MAR 09  P 07:58

CIVIL

DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2017-972               DIVISION "I"               SECTION: 14

CARROLLTON & OAK, LLC

VS.

NGA NGUYEN, ET AL

FILED: _____               _____
                                                            DEPUTY CLERK

## ANSWER TO THIRD PARTY DEMAND AND RECONVENTIONAL DEMAND

TOMMY NGO, of the full age of majority and domiciled in Jefferson Parish, Louisiana,

through undersigned counsel, files an Answer to the Third Party Demand filed by the Plaintiff,

CARROLLTON & OAK, LLC:

I.

The allegations concerning residency set forth in paragraph one (I) are admitted.

II.

The allegations contained in paragraph two (II) are admitted.

III.

The allegations contained in paragraph three (III) are denied out of an abundance of

caution.

IV.

The allegations contained in paragraph four (IV) are denied.

V.

The allegations contained in paragraph five (V) are admitted, with further explanation

that Third Party Plaintiff is in default due to the outstanding promissory note.

VI.

The allegations contained in paragraph six (VI) are denied.

VII.

The allegations contained in paragraph seven (VII) are denied, including the allegations

contained in sub-paragraphs (a) through (j).

EXHIBIT
"B"

14 PGS IN GLOBO

VERIFIED

Celeste Hunter

2020 MAR 11  A 11:09

E-Filed

FILED

2020 MAR 09 P 07:58

CIVIL

DISTRICT COURT

VIII.

The allegations contained in paragraph eight (VIII) are denied.

IX.

The allegations contained in paragraph nine (IX) are denied.

X.

The allegations contained in paragraph ten (X) are denied.

XI.

The allegations contained in paragraph eleven (XI) are denied.

XII.

The allegations contained in paragraph twelve (XII) are denied.

XIII.

The allegations in the prayer for relief are denied. Third Party Defendant specifically denies that Third Party Petitioner is entitled to any damages, attorney's fees, or any other relief whatsoever.

**WHEREFORE**, Third Party Defendant, TOMMY NGO, prays that this Answer be deemed good and sufficient, and after legal delays and due proceedings are had, that judgment be rendered in favor of the Third Party Defendant herein and against Third Party Petitioner, dismissing Third Party Petitioner's petition with prejudice at Third Party Plaintiff's cost.

Third Party Defendant also prays for such other general and equitable relief as the nature of the case may permit, including reasonable attorney's fees.

## RECONVENTIONAL DEMAND

Now assuming the role of Plaintiff-in-reconvention, TOMMY NGO, of the full age of majority and domiciled in Jefferson Parish, Louisiana, respectfully represents that:

I.

Made Defendants-in-reconvention herein are:

1. CARROLLTON & OAK, LLC, is a Louisiana limited liability company domiciled in Orleans Parish, Louisiana and

2. GERARD P. MCGOVERN, an individual of the full age of majority domiciled in the Orleans Parish, Louisiana.

2

FILED

2020 MAR 09  P 07:58

CIVIL

DISTRICT COURT

### COUNT 1

Suit on Promissory Note and Petition for Eviction

II.

Defendant, CARROLLTON & OAK, LLC, whose domicile is 2718 State Street, New Orleans, Louisiana 70118, is truly indebted to Plaintiff-in-reconvention in the amount of seven hundred three thousand seven hundred twenty seven and 49/100 dollars ($703,727.49), together with interest from April 24, 2014, at the rate of three percent (3%) per annum until paid in full and reasonable attorney's fees plus all costs for the following, to-wit:

III.

Plaintiff-in-reconvention is the holder in due course of a promissory note executed by Defendant-in-reconvention on April 24, 2014, in the principal sum of $703,727.49 together with interest as provided in the note, which said note is attached hereto as Exhibit "A" and made a part hereof.

IV.

Defendant-in-reconvention defaulted on said promissory note on April 24, 2019, by failing to pay the principal and accrued interest coming due causing the note to become fully due and payable according to its terms.

V.

Defendant-in-reconvention's default on the promissory note constitutes an event of default by the tenant under Article XVI, Section (b) of the lease agreement between Tommy Ngo and Carrollton & Oak, LLC, dated April 24, 2014, with said excerpt of the lease agreement attached hereto as Exhibit "B" and made a part hereof.

VI.

Under Article XVII of the lease agreement, Tommy Ngo has the full right "to cancel [the] lease effective immediately." Article XVII further states that Carrollton & Oak, LLC, waives the necessity of any notice to vacate. *See* Exhibit "B" at page 11.

VII.

3

FILED

2020 MAR 09   P 07:58

CIVIL

DISTRICT COURT

To date, Defendant-in-reconvention has failed to remedy their default.

VIII.

Pursuant to La. Code of Civil Procedure art. 4701, *et seq.*, Plaintiff-in-reconvention requests the eviction of Defendant-in-reconvention, Carrollton & Oak, LLC, from the leased premises.

### COUNT 2

### Petition on NSF Checks

I.

Defendant-in-reconvention, GERARD P. MCGOVERN, domiciled in the Parish of Orleans, State of Louisiana, issued two checks to Plaintiff-in-reconvention in the amount of six thousand three hundred and forty dollars and twenty-five cents ($6,345.25) each on October 15, 2018, and November 30, 2018, both signed personally by the defendant-in-reconvention, attached and incorporated as Exhibits "C" and "D" and made parts hereof.

II.

Payment of these checks were refused by Defendant-in-reconvention's bank, which returned both checks marked "NSF." Plaintiff-in-reconvention incurred NSF fees totaling sixteen dollars ($16.00). *See* Exhibits "C" and "D".

III.

On January 10, 2019, Plaintiff-in-reconvention, through undersigned counsel, made written demand for payment of the checks on Defendant-in-reconvention by FedEx at the address shown on the check, which letter was deliver on January 11, 2019, and attached hereto as Exhibit "E". FedEx Proof of Delivery is attached hereto as Exhibit "F".

IV.

Pursuant to La. R.S. § 9:2782, unless the amount due is paid in full within fifteen (15) working days from receipt of the written notice, the holder of the check may file a civil action "for **two times the amount of the check** or one hundred dollars, whichever is greater, plus any court costs and reasonable attorney's fees incurred by the payee in taking

4

FILED

2020 MAR 09 P 07:58

CIVIL

DISTRICT COURT

the action." (emphasis added)

V.

Tommy Ngo reserves all other rights he may have under the lease and the law.

**WHEREFORE**, Plaintiff-in-reconvention, TOMMY NGO, prays that:

1. Defendant-in-reconvention, Carrollton & Oak, LLC, be duly cited to appear and that after due proceedings there be judgment in favor of Plaintiff-in-reconvention and against Defendant-in-reconvention in the amount of seven hundred three thousand seven hundred twenty seven and 49/100 dollars ($703,727.49), together with interest from April 24, 2014, at the rate of three percent (3%) per annum until paid in full and reasonable attorney's fees plus all court costs of these proceedings;

2. Defendant-in-reconvention, Carrollton & Oak, LLC, show cause on the date and time assigned by this Honorable Court, why it should not be ordered to: (1) vacate the leased premises; (2) reimburse Tommy Ngo for all damages he incurred due to its failure to pay the promissory note on time; (3) deliver possession of the leased premises to Tommy Ngo; and (4) pay all costs of this action, including, but not limited to, reasonable attorney's fees.

3. Defendant-in-reconvention, Gerard McGovern, be duly cited to appear and that after due proceedings there by judgment in favor of Plaintiff-in-reconvention and against Defendant-in-reconvention, Gerard McGovern, in the true amount of twenty-five thousand three hundred and ninety-seven dollars ($25,397.00) with legal interest from date of judicial demand until paid, and for reasonable attorney's fees of thirty-five percent (35%) of principal and interest or the greater amount as the Court deems proper and for all costs of these proceedings.

E-Filed

FILED

2020 MAR 09   P 07:58

CIVIL

DISTRICT COURT

Respectfully Submitted,

*Allison J. Johnson*

CONNIE P. TRIEU (Bar No. 30312)
ALLISON J. JOHNSON (Bar. No. 36207)
TRIEU LAW, LLC
1800 Carol Sue Ave., Suite 7
Gretna, LA 70056
(504) 301-4525 office
(504) 301-4683 facsimile
*Attorneys for Tommy Ngo*

**PLEASE SERVE:**

**Carrollton & Oak, LLC**
*Through its attorneys of record:*

Eric Oliver Person
1539 Jackson Ave., Suite 100
New Orleans, Louisiana 70130

Michael Bagneris
935 Gravier St., Suite 1702
New Orleans, Louisiana 70112

**Gerard P. McGovern**
2718 State St.
New Orleans, LA 70118

6

FILED

2020 MAR 09  P 07:58

CIVIL

DISTRICT COURT

**PROMISSORY NOTE**

$703,727.49

**Jefferson Parish, Louisiana,
April 24, 2014.**

    **FOR VALUE RECEIVED,** I, we, or either of us, in solido, promise to pay to the order of Tommy Ngo, Rose Nguyen and Man Ngo, at any such place as the holder of the note may designate, the principal sum of **Seven Hundred Three Thousand Seven Hundred Twenty Seven and 49/100 ($703,727.49) Dollars,** with interest from DATE until paid at the rate of Three (3.0 %) per cent per annum; interest and principal payable as follows, to-wit:

    The total of principal and accrued interest shall be paid on or before the 24th day of April 2019. Provided, however, Borrower may prepay this Note in full at anytime without penalty. Any payments made in excess of the accrued interest at any given time shall be credited towards the principal balance of the Note; and, all future interest shall accrue based upon the then principal balance after credit given for any payment.

    The makers of this note and the endorsers, guarantors and sureties hereon hereby severally waive presentment for payment, demand notice of non-payment, protest, and all pleas of division and discussion, and agree that the time of payment hereof may be extended from time to time, one or more times, without notice of such extension or extensions, and without previous consent hereby binding themselves, in solido, unconditionally and as original promissors, for the payment thereof in principal, interest, cost and attorney's fees. It is hereby expressly agreed that failure to pay this note punctually at maturity shall constitute default hereunder or, if this note be payable in installments, that if default be made in any of the payments of the aforesaid installments when and as the same shall become due and payable, then and in that event, the unpaid balance of the aforesaid principal sum at the option of the holder or holders hereof shall become and be due and payable, and the holder or holders hereof may proceed to have seized and sold the property described in the act with which this note is identified, given to secure the same under the terms and in the manner provided in the said act. Every person at any time liable for the payment of the debt evidenced hereby waives any homestead or exemption right against said debt and waives presentment for payment, demand, protest and notice of non-payment of this note and any or all lack of diligence or delays in collection which may occur and consents that the holder or holders may extend the time of payment or otherwise modify the terms of payment or any part of the whole of the debt at any time at the request of any other person liable, and agrees that should this note not be paid at maturity or when due or demandable, as herein provided, or should it become necessary to employ an attorney to enforce the same or recover the amount hereof or any portion of same, or should this note be placed in the hands of an attorney for collection or compromise or for any other reason to pay the reasonable fees of such attorneys, and all costs of collection.

CARROLLTON & OAK, LLC

BY: _____
       Nidal Jaber

BY: _____
       Gerard McGovern

NE VARIETUR for identification with a Lease with Option to Purchase executed this 24th day of April 2014.

_____
TIMOTHY F. HAND
NOTARY PUBLIC
La. Bar Roll No. 24446
Commission Expires at Death

**EXHIBIT
A**

FILED

2020 MAR 09   P 07:58

CIVIL

DISTRICT COURT

claim against the Landlord for the value of any unexpired term of this lease. In the event of a partial taking or condemnation which is not extensive enough to render premises unsuitable for the business of the Tenant, then the Landlord may restore the Leased Premises to a condition comparable to its condition at the time of that condemnation less the portion lost in the taking, and the lease continues in full force and effect, and fixed rent is reduced proportionately as to the portion lost in the taking.

Section 2. In the event of a total or partial acquisition, appropriation or taking by expropriation or condemnation proceedings or by any right of eminent domain for any public or quasi-public use or purpose of the Leased Premises, the Landlord and Tenant both have the right to sue for, prove, collect and retain and recover amounts of awards, damages and proceeds which represent the Landlord's and Tenant's losses, and the total market value of the property taken and all severance damages to the remainder, if any.

Section 3. In the event of a taking of the Leased Premises, the minimum rent and other charges, or a fair and just proportion of rent and charges, according to the nature and extent of the damage sustained, will be suspended or abated.

### ARTICLE XVI.

### EVENTS OF DEFAULT

The following events are deemed events of default by Tenant under this lease:

a.   Tenant fails to pay the Deposit and/or any installment of the rent reserved in this lease when due, or any payment, or any other payment or reimbursement to Landlord required in this lease when due, and that failure continues for a period of sixty (60) days after notice to Tenant by overnight courier to the Notice address listed below.

b.        Tenant fails to pay the Promissory Note executed this same date payable to Landlord, in accordance with its terms.

c.   Tenant becomes insolvent, or makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors.

d. Tenant files a petition under any section or chapter of the United States Bankruptcy Code, as amended, or under any similar law or statute of the United States; or an order for relief is entered against Tenant in any proceedings filed against Tenant under a law or statute.

e. A receiver or trustee is appointed for all or substantially all of the assets of Tenant.

f. Tenant vacates all or a substantial portion of the Leased Premises, whether or not Tenant is in default of the rental payments due under this lease.



EXHIBIT

B

FILED

2020 MAR 09   P 07:58

CIVIL

DISTRICT COURT

g. Tenant fails to discharge any lien placed on the premises by its act or omission (but not including any liens solely caused by Landlord actions) within sixty (60) days after that lien or encumbrance is filed against the premises. Provided, however, in the event Tenant has a valid claim or action against any Lienholder, and disputes the validity of any lien or encumbrance, Tenant shall not be in default under this Lease for failing to remove the lien or encumbrance within sixty (60) days of its filing. Tenant further agreeing to diligently pursue all legal means to have any such disputed lien or encumbrance discharged.

h. Tenant fails to comply with any term, provision or covenant of this lease and does not cure that failure within sixty (60) days after written notice to Tenant.

ARTICLE XVII

REMEDIES

Section 1. On the happening of any event of default in Article XVI above and not remedied, and without in any way limiting the other rights of the Landlord, Landlord thereafter has the full right, at its option( ) to cancel this lease effective immediately or as of any date which Landlord may select and retain the Deposit or (2) to proceed one or more times for past due installments of rental without prejudicing its rights to proceed later for remaining installments or to exercise any other remedy; or (3) to have recourse to any other remedy to which Landlord may be entitled by law. In the event Landlord exercises the right to cancel the lease, then: (a) Landlord at its discretion has the right as soon as the cancellation is executed to reenter the leased premises and relet them for the price and terms as may be available without notice or other proceedings, Tenant by this agreement assenting to this right and expressly waiving the necessity of any notice to vacate.

ARTICLE XVIII

MISCELLANEOUS PROVISIONS

Section 1. Waiver and Reservations. Failure on the part of the Landlord to complain of any action of nonaction on the part of the Tenant, no matter how long that failure to complain may continue, is never deemed to be a waiver by the Landlord of any of Landlord's rights under this lease. Further, it is covenanted and agreed that no waiver at any time of any of the provisions of this lease by the Landlord is construed as a waiver of any of the other provisions under this lease and that a waiver at any time of any of the provisions of this lease is not construed as a waiver at any subsequent time of the same provisions. The consent or approval by the Landlord to or of any action by the Tenant requiring the Landlord's consent or approval is not deemed to waive or render unnecessary the Landlord's consent or approval to or for any subsequent similar act by the Tenant.

Section 2. Covenant of Quiet Enjoyment. The Tenant, subject to the terms and provisions of this lease, on payment of the rent and on observing, keeping and performing all of the terms and

11

**FILED**

2020 MAR 09  P 07:58

CIVIL

DISTRICT COURT

# GULF COAST BANK
## & Trust Company

041    02    1082    Page:
Date:                    11/13/2018
Account:

200 St. Charles Ave. • New Orleans, LA 70130
*Return Service Requested*

ROSE NGUYEN
TOMMY NGO
801 MARLENE DRIVE
GRETNA LA  70056

```
***************************************************
*              NOTICE OF ITEMS CHARGED            *
*                 TO YOUR ACCOUNT                 *
***************************************************
```

:RRY PARKWAY                              Telephone: 504-561-6112
;7 TERRY PARKWAY
;RRYTOWN LA 70056

THE FOLLOWING ITEMS HAVE BEEN RETURNED AND ARE BEING
CHARGED BACK TO YOUR ACCOUNT.

```
...............Payor................  .......Reason.......    Amount
:RARD MCGOVERN                        INSUFFICIENT FUNDS      6,345.25

:tal Items Charged Back to your Account                      6,345.25
.EASE DEDUCT A HANDLING FEE OF:                                  8.00
:UR ACCOUNT BALANCE AFTER THIS ACTIVITY IS:
.EASE REFER ALL QUESTIONS TO OUR CALL CENTER-504-561-6124.
```



**EXHIBIT**
**C**

E-Filed

FILED

2022 MAR 09  P 07:58

CIVIL

DISTRICT COURT

# GULF COAST BANK
### & Trust Company

041     02      1082   Page:
Date:                    12/12/2018
Account:

200 St. Charles Ave. ■ New Orleans, LA 70130
Return Service Requested

ROSE NGUYEN
TOMMY NGO
801 MARLENE DRIVE
GRETNA LA  70056

```
***********************************************
  *         NOTICE OF ITEMS CHARGED          *
  *            TO YOUR ACCOUNT                *
***********************************************
```

TERRY PARKWAY                           Telephone: 504-561-6112
737 TERRY PARKWAY
TERRYTOWN LA 70056

THE FOLLOWING ITEMS HAVE BEEN RETURNED AND ARE BEING
CHARGED BACK TO YOUR ACCOUNT.

```
...............Payor.................  .......Reason.......      Amount
GERARD MCGOVERN                        INSUFFICIENT FUNDS        6,345.25

Total Items Charged Back to your Account                        6,345.25
PLEASE DEDUCT A HANDLING FEE OF:                                    8.00
YOUR ACCOUNT BALANCE AFTER THIS ACTIVITY IS:
PLEASE REFER ALL QUESTIONS TO OUR CALL CENTER-504-561-6124.
```

NSF

*061000146*
12/12/2018
5756756760

This is a LEGAL COPY of
your check. You can use it
the same way you would
use the original check.

RETURN REASON - A
NOT SUFFICIENT
FUNDS

GERARD P McGOVERN      12-16                    1761
27 AUDUBON BLVD
NEW ORLEANS, LA 70118

11/0/18

Pay to the
Order of    Tommy Ngo              $ 6345.35

sixty three hundred forty five 25/100   Dollars

iBERIABANK

For 1200 S. Carrollton

⑆265270413⑆        1511  1761

⑆265270413⑆        1511 1761   #0000




EXHIBIT
D

E-Filed

FILED

2020 MAR 09 P 07:58

CIVIL

DISTRICT COURT

CONNIE P. TRIEU
TRIEU LAW, LLC

ATTORNEY AT LAW
537 Holmes Blvd., Suite A
GRETNA, LOUISIANA
70056

TELEPHONE (504) 301-4525
FAX (504) 301-4683
ct@trieulawfirm.com

January 10, 2019

*Via FedEx*

Gerard P. McGovern
2718 State St.
New Orleans, LA 70118

Re:     **1200 S. Carrollton Avenue – Past Due Rent**

Dear Mr. McGovern:

You are hereby notified that the rent for 1200 S. Carrollton Ave is past due for the months of October, November, and December of 2018 and January of 2019. Under Article XVI of the lease agreement, failure to pay the rent when due constitutes an event of default if the failure continues for a period of sixty (60) days after notice to Tenant. You are hereby notified that you have sixty (60) days after receipt of this letter to issue a cashier's check or certified check to cover the rent for October, November, and December of 2018 and January 2019. Failure to do so will be deemed an event of default. Per Article XVII, Section 1 of the lease agreement, Mr. Ngo has the right to cancel the lease effective immediately upon any event of default not remedied.

Further, you are hereby notified that checks numbered 1737 and 1761, issued by you on October 15, 2018 and November 30, 2018, drawn upon Iberia Bank, and each payable to Tommy Ngo in the amount of $6,345.25 (total $12,690.50), have been dishonored. See attached. Pursuant to La. R.S. 9:2782, you have fifteen (15) working days from receipt of this notice to tender payment in full of the amount of the check plus a service charge of five percent (5%) of the face amount of the check, the total amount due being $13,325.03 plus two $8.00 NSF bank charges for a total of **$13,341.02**. Unless this amount is paid in full within the fifteen-working-day period, the holder of the check may file a civil action against you for two times the amount of the check, plus any court costs and reasonable attorney fees incurred by the payee in taking the action.

When considering the late rent and NSF check service charges, the total amount owed by you to Mr. Ngo is **$26,031.52**. This amount is broken down as follows:

- October 2018 Rent:     $6,345.25
- NSF service charges:   $325.26
- November 2018 Rent:   $6,345.25
- NSF Service charge:    $325.26



EXHIBIT
**E**

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

**FILED**

**2020 MAR 09  P 07:58**

**CIVIL**

**DISTRICT COURT**

- December 2018 Rent:      $6,345.25
- January 2018 Rent:       $6,345.25

You are herby notified that you have sixty (60) days from the receipt of this letter to provide a certified check or cashier's check to Mr. Ngo for the full amount of past due rent and all NSF charges. Mr. Ngo will not accept any partial payments of the delinquent rent.

If you have any questions or concerns regarding this matter, please feel free to contact our office.

Sincerely,

*Allison J. Johnson*

Allison J. Johnson
Trieu Law, LLC

<u>This is an attempt to collect a debt. Any information obtained will be used for that purpose.</u>

**E-Filed**



**FILED**

**2020 MAR 09 P 07:58**

**CIVIL**

**DISTRICT COURT**

February 12, 2019

Dear Customer:

The following is the proof-of-delivery for tracking number **774165591547**.

| Delivery Information: | | | |
|---|---|---|---|
| Status: | Delivered | Delivered to: | Residence |
| Signed for by: | Signature not required | Delivery location: | 2718 STATE ST |
| | | | NEW ORLEANS, LA 70118 |
| Service type: | FedEx Express Saver | Delivery date: | Jan 11, 2019 12:56 |
| Special Handling: | Deliver Weekday | | |
| | Residential Delivery | | |

NO SIGNATURE REQUIRED
Proof-of-delivery details appear below; however, no signature is available for this FedEx Express shipment because a signature was not required.

| Shipping Information: | | | |
|---|---|---|---|
| Tracking number: | 774165591547 | Ship date: | Jan 10, 2019 |
| | | Weight: | 0.5 lbs/0.2 kg |

| Recipient: | Shipper: |
|---|---|
| Gerard P. McGovern | Connie Trieu |
| Carrollton & Oak, LLC | Trieu Law, LLC |
| 2718 State St. | 537 Holmes Blvd. Ste A |
| NEW ORLEANS, LA 70118 US | Gretna, LA 70056 US |

Thank you for choosing FedEx.



EXHIBIT
F